CHARLES MATTOON, Judge of Probate and Insolvency, *vs.* HOW
LAND COWING & CHARLES A. PIERCE.
SAME *vs.* HOWLAND COWING & ZEBEDIAH GRAVES.

A guardian, licensed to sell real estate of his ward for the purpose of investment, did not
duly invest the proceeds, but charged himself with such proceeds and with interest
thereon from year to year in his general guardianship account, which was allowed by
the court of probate, and expended sums equal to such interest for the support of
his ward. *Held*, that he was responsible for such proceeds upon the special bond given
by him on obtaining the license; but for the interest thereon, upon his general bond.

A guardian is responsible on his general bond, for money due from him to his ward at the
time of his appointment, and for the rent of real estate occupied by the guardian before
that time.

A guardian, who was also executor of a will in which his ward was residuary legate ,
paid out for the support of his ward, as appeared by his guardianship account as
allowed, more than he received as guardian. *Held*, that the excess should have bee i
credited to him in his executor's account as paid over to himself as guardian, ar t
charged to him in his guardianship account; and that if not so done in form, it shou. l
be deducted from the liability of himself and his sureties on his bond as executor.

HOAR, J.   The second of these suits is brought upon two
bonds, in which Howland S. Cowing was principal, and How
land Cowing and Zebediah Graves were the sureties ; one given
by the said H. S. Cowing, as executor of the will of Emily Rus-
sell, and the other as the guardian of Charles H. Russell, a
minor son and residuary devisee and legatee of the said Emily.

The first suit is upon a special bond, given by H. S. Cowing,
upon obtaining a license from the probate court to sell certain
real estate of his ward for the purpose of investment, upon
which bond Howland Cowing and Charles A. Pierce were
sureties.

Howland S. Cowing is deceased, insolvent.   Before his death,
he settled two accounts in the probate court as executor, but
never settled any account as guardian.   His administrator has
presented a final account of his doings as executor, and his
account as guardian, both of which have been allowed.   It
appears that the guardian was twice licensed to make a sale of
the real estate of his ward ; that under the first license he gave
a bond which is not now in suit, and sold real estate to the
amount of $620 ; that under the second license he gave the

bond which is sued as above stated, and sold real estate to the amount of $1,600 ; that both of these sums have been charged to him in his guardian's account, with the annual interest accruing upon them ; that he invested the $620 only in a note for that sum of a firm of which he was a member, which firm were insolvent at the time their note was thus taken ; that he never actually invested the $1,600, but appropriated the same to his own use ; that by the final executor's account, as it was allowed, there appeared a balance due from the executor of $1,611.87, and by the account of guardianship a balance due from the guardian, including the proceeds of the sale of the real estate, of $1,344.51.

Upon these facts the court is called upon to determine the respective liability of the sureties to the several bonds in suit.

In the first place, the license to sell the real estate was in each instance for the purpose of investment, under the second section of the seventy-second chapter of the revised statutes ; and the special bond was given, provided by section 10 of the same chapter. No investment, such as the statute contemplates, was actually made ; for we cannot regard the nominal investment of the $620 as anything but a pretence and a fraud. The money never having been invested, the sureties under the special bonds are responsible for it, because the condition of those bonds has never been performed. There are two purposes for which a guardian, under the provisions of the 72d chapter of the revised statutes, can be licensed to sell the real estate of his ward. The first is that named in the first section, when the income of the ward's estate is insufficient for his maintenance. The other, for which the second section provides, is when the estate is not needed for his maintenance, but it appears to be for the benefit of the ward that the investment of his property should be changed from real to personal estate. In the first case, so much of the proceeds of the sale as may be required for immediate use may be expended by the guardian, and the remainder invested until it shall be needed for the support of the ward, when the capital, as well as the income, may be expended at the discretion of the guardian, like other personal property of the

ward.   But when the sale is for the purpose of investment, it is not intended that the capital shall be at the disposal of the guardian, and he has no right to use it for the maintenance of the ward, so long as there are any other funds in his hands applicable to that purpose.   By the 5th section, any surplus which may remain after the final settlement of the guardianship account is to be considered as the real estate of the ward, and to go to the same persons who would have been entitled to the real estate if it had not been sold.   The capital, therefore, of the proceeds of the sale of the real estate, which should have been, but was not invested, is chargeable to the guardian on his special bonds, and not on his general account.

But the interest upon these sums stands upon a different ground.   If the investment had been made according to the provisions of the license to sell, the income of such investment would be applicable to the maintenance of the ward, by the guardian, like the income of any other estate under his control. And although no income has actually been received, yet as the administrator of the guardian has charged himself with it, from year to year, as if it had been received, in the general guardianship account, which has been allowed in that form, and as the guardian actually expended a corresponding sum in the support of his ward, we think it is to be treated as if it had been received and accounted for, and that the sureties in the special bond were exonerated to that extent.

It is argued on behalf of the sureties on the special bond, that the guardian having been charged with the proceeds of the sale of the real estate, in his general account of guardianship, and that account having been allowed, they are therefore discharged, and the whole liability transferred to the sureties under the guardian's general bond.   But the contrary was determined in the case of *Lyman* v. *Conkey*, 1 Met. 317, where it was held, that although it was conclusively settled by the allowance of the guardian's account, that he was chargeable with the whole balance thereby appearing to be due, yet that it was not conclusive upon the question, which class of sureties would be responsible for his failure to do with such balance what his

33 *

duty and the order of the court required ; and that this respon‧sibility would depend upon the source from which the money charged to him in the account was derived.

The deduction from the guardianship account of the principal sums received from the sale of the real estate would leave a balance in favor of the guardian upon his general bond.  And the sureties upon that bond contend that it should be further in‧creased by a deduction of three items ; the first, an item of cash due to the ward, and received by Cowing before his ap‧pointment as guardian ; and the other two, for rent of the real estate of the ward, occupied by Cowing before his appointment. The reason given for this deduction is, that " the sureties in Cowing's bond as guardian are not liable for his doings before he was appointed guardian."  But these were debts due from him to his ward at the time of his appointment.  It would have been the duty of any other person who might have been ap‧pointed guardian to collect them, and apply them to the use of the ward.  Cowing, who was himself the debtor, being ap‧pointed the guardian, could only collect them from himself by including them in the inventory of his ward's estate as assets in his hands to be accounted for, and by charging himself with them in his guardianship account.  This has been properly done in the account which has been settled.

The remaining question is upon which of the bonds, that given by Cowing as executor, or that given as guardian, he is to be held responsible for the balance unexpended of the estate, which in equity belongs to his ward.  The question is of no practical importance in the case before us, because the sureties upon the two bonds are the same, and one suit is brought upon both.  But as the guardian appears by his account, as it has been allowed, to have paid out more than he has received as guardian for the support of his ward ; as the guardian and executor were the same person; as the balance of the estate in his hands as executor belonged to his ward, and should have been transferred to himself as guardian, if the final account as executor had been properly stated and settled ; and as the guar‧dian actually expended for his ward more than he received from

any other source which he could rightfully appropriate to his support; equity will regard him as having, in his capacity of executor, furnished the funds to himself as guardian, which he has thus disbursed for his ward's benefit, and will allow them in reduction of the liability of his sureties on his bond as executor. It would have been more correct, in form, if these sums had been credited, in making up his account as executor, as paid over to the guardian, and charged to the guardian as received from the executor. But such seems to us the substance and real nature of the transaction, and we think the facts proved show a sufficient discharge of so much appearing due on the executor's account as was thus applied. The balance due the guardian is therefore to be deducted from the balance appearing to be due from the executor, and after deducting one hundred dollars more by agreement of the parties, as the amount of a legacy paid by the executor, and accidentally omitted to be credited in his account, judgment will be entered for the plaintiff in both suits in conformity with these principles.

*C. Allen*, for the plaintiff, cited *Lyman* v. *Conkey*, 1 Met. 322; *Benchley* v. *Chapin*, 10 Cush. 173; *Ipswich Manuf. Co.* v. *Story*, 5 Met. 513; *Fay* v. *Taylor*, 11 Met. 529.

*S. O. Lamb*, for Pierce, cited Rev. Sts. *c.* 79, § 5; *Fay* v. *Taylor*, 11 Met. 529; *Hall* v. *Cushing*, 9 Pick. 395; *Conkey* v. *Dickinson*, 13 Met. 51.

*D. W. Alvord*, for Graves, cited Rev. Sts. *c.* 72, §§ 4, 10; *Lyman* v. *Conkey*, 1 Met. 317, 323; *Fay* v. *Taylor*, 11 Met. 529, 534, *Brooks* v. *Brooks*, 11 Cush. 18; *Prior* v. *Talbot*, 10 Cush. 1