## HIRAM BROWN ET AL., RESPONDENTS, *v.* MARY O. BROWN ET AL., APPELLANTS.

WILL—EXECUTORS AND TRUSTEES—POWER TO SELL REAL ESTATE.—Where a testator devised his real estate to trustees to pay his debts and to hold the residue in trust for the benefit of an incorporated town, the trustees, who were also the executors of the will, had an implied power to sell sufficient land to pay the debts where the will contained no express power for that purpose.

MUNICIPAL CORPORATION—MAY TAKE UNDER WILL.—A testator devised real property to trustees, to be held by them in perpetuity for the benefit of the town of Astoria, with power to manage the same in their discretion: *Held,* that the will was not void as to such devise on the ground that it created a perpetuity.

WILL—ORDER TO SELL NOT REQUIRED, WHEN.—Real property having been devised to trustees to be held by them for the purpose of paying the testator's debts, and the residue for other purposes, the legal title was vested in them, and they had power to sell the land for money to pay the debts, without an order of the probate court; nor was it necessary that such sale should be confirmed by that court.

SETTING ASIDE WILL—EFFECT OF, ON ACTS DONE UNDER.—Where a will was duly admitted to probate, by the probate court, and letters testamentary were issued to the executors named therein, and such will was afterwards set aside on account of the insanity of the testator; all acts done by the executors in the due course of administration, before the revocation of the letters testamentary, are deemed and held to be valid.

APPEAL from Clatsop County. The facts are stated in the opinion.

*Robb & Fulton*, for appellants:

A power given to manage property does not authorize its

sale; but even if such authority is implied, the statute interferes for the protection of heirs and creditors, and provides the manner in which the sale shall be conducted and reported to the court. (Civ. Code, 328, secs. 1109, 1123.) The California statute on the same subject is very similar, and the supreme court of that state held in a case where the will expressly directed a sale, that the sale must be reported to and confirmed by the probate court. (*Pekins* v. *Gridley*, 50 Cal. 97.)

The devise is in trust: 1. To pay the debts of the testator. 2. To hold the residue in perpetuity for the benefit of the town of Astoria. The first trust is void, for the reason that a devise of property in trust to pay debts simply is void, the law having already provided for the same thing. In the language of Lord Chancellor Talbot, in the case of *Hazelwood* v. *Pope*, 3 P. Wms. 324, and quoted with approval in *Lewis* v. *Bacon*, 3 Hen. and M. 103, "it is like giving lands to the heir, which is void." (Hill on Trustees, 484.)

The second devise is void because it creates a perpetuity. It comes exactly within the definition of perpetuity given by the law writers, and which they say "the law abhors." We do not think that it can be maintained that the will is void because creating a perpetuity. All we claim is that the devise is void upon that ground, and that the town of Astoria takes nothing. It had no power under its charter to take this devise. (Laws, 1872, p. 189; 7 N. Y. 272.) Therefore, the trust estate fails, and the fee vests in the heirs. Hustler and Aiken are "to hold" the residue in "perpetuity" for the benefit of the town of Astoria. This of course stops alienation, for the trustees, after the debts are paid, clearly can not sell or convey the legal title. They are "to hold" the lands in perpetuity. "The judges of the courts of common law have for many centuries established it as a rule that the real property shall in no case be rendered perpetually unalienable by the act of the proprietors, or, as it is usually expressed, that perpetuities shall not be allowed." (Greenl. Cruise, Dig. Title 32, c. 24, sec. 1.) But even if it did not create a perpetuity, the case is

no better for the plaintiffs, for the reason that if the devise
is not void as creating a perpetuity, the Statute of Uses, 27
Henry VIII. immediately vests the fee in the town of
Astoria.    (2 Blackstone, 332 *et seq.*; 4 Kent, 294, 299;
Perry on Trusts, secs. 7, 298, 308, 312, 313, 316, 317, 320;
Wash. on Real Property, secs. 44, 45; Hill on Trustees, 344
*et seq.*; 2 Blackstone, 332; 4 Kent, 294, 298; Redfield on
Wills, 531; Greenl. Cruise, Dig. Title 12, c. 1.)

We are unable to find any Oregon statute regulating Uses
and Trusts, and hence argue that the Statute of Uses is a
part of the common law of Oregon.   "It is also the estab-
lished doctrine that English statutes passed before the im-
migration of our ancestors and applicable to our situation,
and in amendment of the law, constitute a part of the com-
mon law of this country." (Sedgwick Stat. and Const. Law,
8, and cases cited also, 18; 1 Kent, 473, 513.)   The author-
ities are all agreed that the statute, where in force, executes
the use in such cases as the one before us, so that whether
this devise is void as creating a perpetuity or the statute
executes the use in favor of the town of Astoria, the second
trust fails.

It would seem that the rule laid down in what Chancellor
Kent calls "the great case of *Coster* v. *Lorillard,*" 14 Wend.
265, applies.   The principal trusts created by the will being
adjudged void, and thus the main intent and object of the
testator defeated, it was held that certain life estates, in
particular lands given by a codicil, were also void, and that
the whole estate passed to the heirs at law.   The testator,
by the terms of the will, appointed Hustler and Aikin his
executors, and requested them as executors to manage his
estate.   The only object of the devise to them was for the
benefit of the town.   That was the purpose of the devise,
and that purpose failing, the whole devise fails.   (*Harris* v.
*Clark,* 7 N. Y. 242.)

In this country the rule is, as we think, as applied to this
case, that the fee vests at once upon the will being pro-
bated either in the heirs, in case the second devise is void,
or in the town of Astoria, subject of course to the debts,
and the trustees take no estate in the land.

In *Popham* v. *Banfield*, 1 Vern. 79, a testator devised lands to trustees for the payment of debts, and after his debts were paid, then in trust for the use and benefit of A. and his heirs male, and it was held that the legal estate was executed by the statute of uses in A., and the court seems to have been of opinion that no legal estate vested in the trustees.

Hill, in his work on Trustees, refers to this case among others, and says, as the result of an examination of the English cases, " Where there was a devise of real estate to persons without words of limitation in trust to pay debts, annuities or legacies, and no sale was expressly directed, it does not appear to have been settled whether the trustees would take the inheritance, or chattel interest, for a term of years." The author further says: "Therefore, if there be a devise to trustees without any words of limitation,    *    * and if, from the amount or nature of the payments to be made, as well as the general scope of the trust, the payments may well be discharged by an annual perception of the rents and profits, and no sale or other anticipation of the income is necessary for that purpose; the authorities, without exception, establish that the trustees will only take a term of years sufficient for raising the required money, and no estate of inheritance will vest in them. And the fact of the devise being to the persons who are appointed executors, would seem to be in favor of this construction." (Hill on Trustees, 243, 246.)

From an examination of the cases cited by this author it appears that where the devise is in trust to pay debts, and, as in this case, no power of sale is given in express terms, it is an unsettled question whether the fee is vested in the trustees so they can sell and convey, or whether they must content themselves with applying the rents and profits to the payment of the debts.

The English authorities seem to hold, and certainly the American authorities do hold, that there is a distinction between a deed of trust *inter vivos* to pay debts and a devise to pay debts. The reason for the distinction will presently appear. If the will in the case at bar had devised the property to the trustees with directions to sell the realty and pay

the debts out of it, the authorities hold that their sale would pass the title.

The New York statute specially authorizes such a disposition by will, but the will must contain a direct power of sale, and it will probably be found that all the American cases are under statutes providing for such disposition by will. But that is not this case. The devise is to the executors in trust to pay the debts of the testator; nothing further is said, and we have been unable to find a single American case where the will did no more than the one before us. It is a devise in trust to pay debts without words of limitation, and without containing a power of sale. In England only the personal estate was liable for the debts of the deceased. The realty went to the heirs or devisees discharged of the debts. Hence English courts of equity have taken jurisdiction of devises of realty to pay debts of deceased " to prevent men sinning in their graves." (Perry on Trusts, sec. 557.) In this country, by statute, the realty is placed upon the same footing as to the liability for debts of the deceased as the personalty, and hence the same rules would apply here to devise of realty in trust to pay debts as would apply to devises of personalty in England. (Civ. Code, p. 331, sec. 1125; Perry on Trusts, secs. 557, 558, 559.)

What is the English rule as to devises of personalty in trusts to pay debts? " It is therefore now conclusively established that a trust by will for the payment of the testator's debts out of his personal estate has no legal operation. A trust, therefore, for the payment of debts, so far as it forms the subject of discussion in the present work, can be created by will only with regard to the real estate of the testator. (Hill on Trustees, 344.) The reason of course is because the law places the property in the hands of the executors, in trust, to pay debts. " It is like giving lands to the heir, which is void." (*Hazlewood* v. *Pope*, 3 P. Wms. 324.)

Perry on Trusts, sec. 559, after speaking of the English law, says: " In the United States both real and personal property are liable for the debts of a deceased person, and no valid trust can be created by will for the payment of debts in either personal or real estate."

It is a familiar rule that when a valid trust is created the Statute of Limitations does not run against the *cestui que trust,* who, in the case at bar, would be the creditors. But our courts have frequently held (on account of both real and personal property being, by law, assets in the hands of the executor for the payment of debts) that an attempt to create a trust in a will to pay debts did not excuse the creditor from presenting his claim in the probate court, the same as if the will had not attempted to create a trust. (*Carrington* v. *Manning,* 13 Ala. 625; Perry on Trusts, 559.) If the will, taken as a whole, is considered, is it not plain that it was the intention of the testator to vest his property in the devisees for the benefit of the town of Astoria? If the testator failed in carrying out his intention in that behalf, as he certainly did, then Hustler and Aiken take nothing under the will except as executors. The will appoints them as executors, waives their giving bonds, and directs them to manage the estate in their discretion. Power is not given them as trustees to manage the estate, but as executors. (Story's Eq. Jur., secs. 1060, 1863.) In other words, while the estate is in the probate court it is to be managed by the executors, who, under the law, must pay the debts out of it. After the debts are paid and the estate settled up, then the trustees hold the residue in trust for the town of Astoria. It is not until the debts are paid that they take as trustees.

The Civil Code (sec. 723) provides as follows: " In case of a judgment, decree or order against a specific thing, or in respect to the probate of a will or the administration of the estate of a deceased person, or in respect to the personal, political or legal condition or relation of a particular person, the judgment, decree or order is conclusive upon the title of the thing, the will or administration, or the condition or relation of the person."

Admitting the will of Cyrus Olney to probate was a decree *in rem,* and no other court has jurisdiction to inquire into the correctness of its action. (*State* v. *McGlynn,* 20 Cal. 233, and cases cited; 28 Ala. 590; 2 Greenl. Ev. sec. 672.) The decree of the same court setting aside the will

was equally a decree *in rem*, and is conclusive as to the condition of Cyrus Olney at the time of his death.

The county court has jurisdiction to set a will aside. (*Hubbard* v. *Hubbard*, decided at the present term of this court; Civ. Code, p. 319, sec. 1061; Redfield on Wills, part 11, p. 56; 3 Greenl. Ev. sec. 672; 9 Iowa, 1 Id. 201; *California* v. *McLaughlin*, 20 Cal. 233; *Fitch* v. *Miller*, 20 Id. 352; Story's Eq. Jur., secs. 184, 1445, 1449.)

*Geo. H. Durham and H. Y. Thompson, and Dolph, Bronaugh & Dolph & Simon, and Thayer & Williams*, for respondents:

The first proposition urged in the argument upon the trial of the cause in the court below, by counsel for appellants, was that the proceedings of the county court in admitting to probate the will of the late Cyrus Olney were without jurisdiction and void, because no notice of their pendency had been given to the alleged heirs of the testator. Under the statutes of Oregon, and the uniform practice which has grown up thereunder, no such notice is required.

The probate of a will is deemed and treated by the statute as an *ex parte* and not as an adversary proceeding, hence no provision is made for giving notice. Again, it is universally held by the courts, and our statute is framed upon this idea, that " the probate of a will under any circumstances is a proceeding *in rem*. It operates upon the thing itself; it defines, and, in a great degree, creates its status. The status thus defined adheres to it as a fixture." (*Derland and James* v. *Harrington's heirs*, 29 Ala. 95; *In re Hunter's Will*, 6 Ohio, 499; *In re Hathaway's Will*, 4 Id. 383; *Lessee of Hall* v. *Ashby and Craven*, 9 Id. 96; *State* v. *McGlynn and Butler*, 20 Cal. 234; *Crippen* v. *Dexter*, 13 Gray, 330; Civ. Code, sec. 723.)

It is also urged that the lands in controversy were sold by the executors to the plaintiffs without the specific order of the county court, or its subsequent confirmation, and that the sales are therefore void. This objection is untenable when it is borne in mind that the executors were also the devisees named in the will; the legal title of record was in them. They had a power coupled with an interest. They,

therefore, had undoubted authority to sell the devised lands, independent of any order of the probate court. (*In re Delany Estate*, 49 Cal. 76; *Hogan* v. *Wyman*, 2 Or. 304.) For the same reason it was unnecessary for the executors to report their sales to the county court for purposes of confirmation.

The supreme court of this state has already disposed of this question in the case of *Hogan* v. *Wyman, supra,* where it is also stated that the proceedings of trustees under a will in the execution of the trusts, would have been without the jurisdiction of the probate court.

It is further claimed by appellants that the decree of the county court, made in a proceeding instituted in that court for the purpose of avoiding the former probate of the will of Olney and its cancellation, on the ground of Olney's alleged insanity at the time of its execution renders null and void all the acts of the executors and trustees under the will. And this, too, notwithstanding it is not claimed that the plaintiffs or any of them were parties to said proceeding, and notwithstanding the further fact that the county court in assuming to thus act as a court of equity, disregarded the plain rule of practice and law, requiring some testimony to be taken in support of the bill, and attempted to render a decree for want of answer. It is respectfully urged by respondents that the county court had no power or jurisdiction to set aside a former probate of a will.

By section 12, of article VII, of the state constitution, it is provided that county courts shall have, among other things, the jurisdiction pertaining to probate courts, together with such other powers and duties, within prescribed limits, as may be provided by law.

The legislature, in section 869 of the civil code, has undertaken to define the power of the county court, by saying that such court shall have exclusive jurisdiction in the first instance, to take proof of wills, and to do other things specifically enumerated, thereby excluding the idea that such court has any other powers, as a probate court, which are not mentioned.

Then, in the first instance, the county court may take proof of wills, and in doing so has exclusive jurisdiction. But it is not provided that said court may afterwards, after the lapse of years, vacate its former decrees, and the particular specification and enumeration of its powers, as has been seen, excludes the idea of the existence of any such inherent power. An appeal lies, under our statutes, from the decision of our county court in probate matters, or a review may be had; but to vacate the formal admission to probate of a will, and to annul the will, is in our system granted exclusively to the circuit courts of the state.

Section 9, of article VII, of the constitution, grants to these courts all judicial power and jurisdiction not exclusively vested elsewhere. It has already been shown, by the statute defining the powers and duties of the county courts, that the jurisdiction under consideration has not been vested in them. In this state it is therefore part of the original chancery jurisdiction of the circuit courts. (*McCarty* v. *McCarty*, 8 Bush. 504.)

But were it to be held otherwise, the subsequent decree of the county court vacating the former probate of will, could not bind purchasers thereunder, who were not parties to those proceedings. Such purchasers must have their day in court. Nor would the pretended decree, annulling the will, relied upon by appellants, invalidate a sale made under the will before the probate thereof was set aside. (*Sheppard* v. *Rhodes et al.*, 6 Ill. 301; *Benson* v. *Rice*, 2 Nott & McCord, 557; *Moore* v. *Tanner*, 5 T. B. Mon. 48; *Foulke* v. *Zimmerman*, 14 Wall. 113; 2 Smith's Leading Cases, 699; 3 Redfield on Wills, 3 ed. 120.)

A familiar illustration of the principle contended for by respondents, is found in the unquestioned doctrine that third persons, who purchase lands under unreversed decrees or judgments, where there is no stay of proceedings, are unaffected in their titles by the subsequent reversal of such decrees or judgments. (Freeman on Judgments, sec. 484, and cases cited.)

The case of *Benson* v. *Rice, supra,* is exactly in point upon the facts. The court there held that, where lands had been

sold by the executor, and the will under which he had acted was afterwards annulled and administration granted, the title of the purchaser under the executor was undisturbed by the subsequent proceedings.

In *Foulke* v. *Zimmerman, supra,* the plaintiff as the heir of one Elizabeth Clew, brought ejectment to recover certain lands in New Orleans, of which said Elizabeth died seised. The defendant claimed title as a purchaser from John F. Clew, the husband of Elizabeth, under a will of said Elizabeth, probated in the proper court in New Orleans, which will declared him to be her sole heir and legatee. The will was made in New York, and was probated in Louisiana on the strength of an order of the surrogate of New York admitting it there, as her will, and the record of the surrogate court in which the will was probated in New Orleans, showed that an appeal had been taken from the order establishing the will. Yet the supreme court of the United States held that a purchaser from a devisee of such will in Louisiana, while the order of the Louisiana court establishing it remained in force, was an innocent purchaser, and was not affected by a subsequent order setting aside the will, to which he was not a party.

In *Roderigas* v. *East River Savings Institution,* 63 N. Y. 460, the court of appeals carry the doctrine even farther than has been claimed by the respondents. In that case, the question was whether payment to an administrator duly appointed by the proper court, of a person supposed to be dead, but who was living at the time, as it subsequently appeared, is valid and conclusive against an administrator appointed after the actual decease of the intestate. And notwithstanding the fact that the surrogate court of New York is, unlike our probate court, a court of inferior and limited jurisdiction, it was held that its decision on the question of its jurisdiction is conclusive until reversed, and protects its officers and all other innocent persons who act on the faith of such decision. It was therefore held that the payment in question was a valid discharge and could not be disturbed by the second administrator. The will of the late Judge Olney was duly admitted to probate; the lands

in controversy were sold by his devisees in trust, for the payment of his honest debts. They were sold for their full value to innocent purchasers in good faith. These purchasers were not bound to look further back than the decree of the county court admitting the will to probate.. (*Florentine* v. *Barton*, 2 Wall. 210.)

By the Court, KELLY, C. J.:

This is a suit to quiet the title to certain lands of which the respondents claim to be the owners in fee-simple. The material facts in the case are substantially as follows: Cyrus Olney, a resident of Clatsop county in his life-time, and at the time of his death, was seised in fee of certain lands in that county, including those described in the complaint. On the eleventh day of December, 1870, he made his last will, which is as follows:

"Last will of Cyrus Olney of Astoria, in the county of Clatsop, state of Oregon:

" 1. I bequeath and devise all my personal property, and real estate that is capable of being disposed of by will to Jackson G. Hustler and Henry S. Aiken, in trust, first, to pay all my debts; and secondly, to hold the residue in perpetuity, for the benefit of the town of Astoria, in the county of Clatsop and state of Oregon.

"2. I appoint the above named trustees to be executors of this will, and request that no bonds be required of them as such executors.

"3. I desire that my executors shall manage my estate, in their discretion, as my representatives.

" Signed and sealed this eleventh day of December, 1870.
                    " CYRUS OLNEY. [SEAL.] "

This will was presented by the executors therein named to the probate court of Clatsop county, and duly admitted to probate on the second day of January, 1871, and letters testamentary issued to Hustler and Aiken as executors of the will. At the time of his death the testator was largely indebted, and the executors proceeded to sell portions of the real estate devised to them in trust to pay this indebted-

ness.    In 1871 the lands in controversy were sold by them for this purpose, and conveyed to the respondents by deeds executed by Hustler and Aiken as trustees, and executors of the will of Cyrus Olney, deceased.    The sales were made without any order of the probate court, and were never confirmed by that court.    In December, 1874, the heirs at law of Olney filed a petition in the probate court of Clatsop county, praying that court to set aside his will on the ground that the testator was not of sound mind when he made it, and for the further reason that the will created a perpetuity.    At the April term, in 1875, of that court, an order was made setting aside the will upon the following grounds:    1. Because it created a perpetuity and was therefore void upon its face; 2. Because Cyrus Olney, at the time said will was executed, was insane and not capable of making a will.

The probate court at the same time revoked the letters testamentary which had previously been issued to Hustler and Aiken.    The appellants, who are the heirs at law of Olney, now claiming that they are the owners in fee of the property in dispute, this suit was brought by the respondents to quiet their title to the same.

The defenses set up by the appellants are: 1. The executors had no authority or power to sell the lands devised; 2. The will of Olney created a perpetuity and was therefore void; 3. The sale of the real estate by the executor is void because no order was made by the probate court authorizing it; and the sale was not confirmed by that court; 4. The will of Olney having been declared null and void by the probate court, all sales of property made under it were thereby annulled; 5. Fraud and collusion between Hiram Brown, one of the respondents, and the executors of the will, whereby he purchased part of the property for less than its value.

On the trial of the case it was stipulated by the parties that the insanity of the testator should not be interposed as a defense in this suit.    As their first objection to the validity of the sale made by the executors, appellants insist that the will gave them no power to sell the land in con-

troversy. Although not given in express terms, we think the power is clearly implied, and that under the clause which gave them authority to manage the estate of the testator in their discretion, it was his intention that the land should be sold in order to carry into effect the provisions contained in the will. The property was devised, first to pay all debts of the testator. They could not be paid without money, and this could only be obtained by a sale of a portion of his property so left in trust.

Gathered from the whole will we think this was the intention of Judge Olney when he made his will, and it is always the duty of courts to carry into effect the intentions of a testator, unless by doing so it would contravene some policy of the law. No precise form of words is requisite to create a power of sale. Powers are made declarations of trust, and any words, however informal, which show an intention to create such a power will be sufficient for the purpose. Thus trustees will take a power of sale by implication under a trust for the payment of debts; for such a power is necessary to the due execution of the trust. (Hill on Trustees, 471 (marginal); 2 Perry on Trusts, sec. 766.)

The next defense interposed by appellants is that the will of Olney created a perpetuity and it is therefore void. It is true the devise is to the trustees to hold the residue of the testator's property, after paying his debts, in perpetuity, but it does not necessarily follow that the land was to remain unsold, if in the discretionary powers of the trustees they deemed it best in the management of the trust to sell the land and apply the proceeds to any public improvements needed by the town of Astoria. The property or the proceeds arising from a sale, undoubtedly were intended to be given to that town, and we see no legal objection to the validity of the will on this account. The rule that a trust in perpetuity cannot be created by devise does not apply to cases of this kind. A trust created for charitable or public uses is not subject to the same limitations as those of a private nature, but may continue for an indefinite length of time, or in perpetuity. (1 Perry on Trusts, sec. 384; 2 Dillon on Muni. Corp., sec. 431; *Girard Will Case*, 2

Howard, 127; *McDonough Will Case*, 15 Id. 367; *Philadelphia* v. *Girard's Heirs*, 45 Pa. 9.)

At the time the will was made the charter of the town of Astoria gave it authority to "purchase, hold and receive property, real and personal, within said town, for public buildings, school purposes and town improvements." Also to "purchase, receive and hold property within and beyond the limits of the town, to be used for burial purposes, and for the reception of persons affected with contagious diseases, and for workhouses and houses of correction, and for the construction of water-works to supply the town with fresh water; and to lease, sell, and dispose of the same for the benefit of the town." (Act of January 17, 1856, art. 1, sec. 2.)

If the devise had been made directly to the town of Astoria we think it would have been valid in law. It was equally so when devised to Hustler and Aiken, in trust for the benefit of the town.

The third point in the defense is that the sale of the real estate to respondents was void, because no order was made by the probate court authorizing such sale, nor was it confirmed by the court. In support of this view, counsel for appellant refer to section 1223, page 330, of the civil code, which is as follows: "When the testator shall make provision in his will for the sale or disposition of all or any particular portion of his estate, for the payment of funeral charges, expenses of administration, or of claims against the estate, the property so appropriated may be sold or disposed of as directed by the executor, or administrator with the will annexed, without an order of the court therefor; but he shall be bound to conduct the sale, and make a return thereof in all respects as if it were made by order of the court, unless there are special directions in the will concerning the manner and terms of sale, in which case he shall be governed by such directions in such respects." This section has reference to cases where the will gives the power of sale to the executor without any interest in the land devised, and in such cases the land belongs to and the title is in the devisee, subject to administration and of course to

the supervision and control of the probate court in regard to the confirmation of the sale. In the case under consideration it is altogether different. By the will the legal title to the real estate was vested in the trustees, and they had complete control of it, subject of course to be held accountable to the *cestuis que trust·* in a court of equity for any abuse of their power. The fee in the land was in them. They had a power coupled with an interest and could sell the property for the payment of the debts without any order of the probate court; nor had that court any authority to confirm or disapprove of any sale over which the law gave it no control. It was so decided by this court in the case of *Hogan* v. *Wyman,* 2 Or. 302, and to the same effect in the decision of the supreme court in 49 Cal. 76.

The fourth point relied on by the appellants as a defense is that the will having been declared void by the probate court, the sale of the land to the respondents was thereby annulled. We hold the law to be otherwise. The probate court had exclusive jurisdiction of the subject-matter in regard to the probate of what purported to be the will of Cyrus Olney. It was duly proved to be his will before that court, and letters testamentary were issued thereon, and until these proceedings were annulled the validity of the will could not be collaterally drawn in question by any one, nor by any other court. Administration of the estate under it could be conducted and enforced, as under any other will duly proved. Such being the case all acts done in the due course of administration, while the will remained unannulled, and the letters testamentary were unrevoked, must be held entirely valid. (3 Redfield on Wills, 120; *Roderigas* v. *East River Savings Institution,* 63 N. Y. 460; *Foulke* v. *Zimmerman,* 14 Wall. 113.)

The only remaining defense interposed by the appellants, is that at the time Hiram Brown, one of the respondents, became a purchaser of the real estate described in the complaint, there was collusion between him and the executors of the will, whereby he purchased the property for less than its value. This defense of fraud in the sale by the executors is confined to the real estate purchased by respond-

ent, Hiram Brown, on the sixth day of November, 1871, for ten thousand dollars. The appellants allege that this sum was far less than its value at the time of the sale, and therefore a presumption of fraud arises from the inadequacy of the price paid for the same. The testimony taken was mainly confined to proving what was the value of block 55 included in that purchase. W. W. Parker, a witness called by appellants, testified that the lots valued by him separately, were, when his deposition was taken, January, 1878, worth in the aggregate, with the improvements thereon, the sum of thirty-one thousand four hundred dollars, and that eight thousand dollars worth of improvements were put on the property since the sale in 1871. He did not state in his testimony what was the value at the time of sale.

C. A. McGuire, in behalf of appellants, testified that the present value, January, 1878, of the lots in block 55, with the improvements thereon, was twenty-five to thirty thousand dollars. He was not asked and did not say how much they were worth when sold to respondent, Hiram Brown, but on cross-examination said that the property had appreciated a good deal since the sale.

L. K. Warren, in behalf of appellants, estimated the lots to be worth two thousand dollars each, or fourteen thousand dollars taken together, on the sixth of November, 1871, when they were sold.

John West, as witness for the appellants, testified that the reputed value of the lots in question was then, January, 1878, about eighteen thousand dollars.

This was all the evidence offered by appellants to prove what the lots in that block were worth. The witnesses on behalf of respondents testified as to the value of the lots in block 55 at the time they were sold as follows:

Captain George Flavel says they were well worth ten thousand dollars, and that if they had been sold separately they might have brought more, but he was not certain.

John Hobson says they were worth at that time, in his judgment, about eight thousand dollars, and that they were well sold at ten thousand dollars.

Henry Miller says that the cash value was about eight thousand dollars.

J. G. Hustler, one of the executors, says the lots in block 55 sold for ten thousand dollars, and this was, he thinks, a pretty good price.

This is all the evidence before us in regard to the value of the property, and the only witness on behalf of the appellants who testified as to what it was worth when respondent Brown became the purchaser is D. K. Warren, who places it at two thousand dollars a lot, or fourteen thousand dollars in the aggregate. All the other witnesses of appellants testify as to what the lots and improvements on them were worth in January, 1878, but say nothing about their value in November, 1871. As they have risen considerably in value since then, and additional improvements been put upon the lots, the evidence of these witnesses becomes practically of no value in determining what the lots were really worth when they were purchased by Brown. We must therefore necessarily resort to the testimony of those witnesses who do state what they were worth at the time, and none of them, except Mr. Warren, place it over ten thousand dollars. It is urged by appellants that instead of the whole block being sold entire, the lots should have been sold separately, as they would then have brought in the aggregate a better price. But when we take into consideration the fact that the property was incumbered with two mortgages to the state of Oregon and one to John West, given by the testator in his life-time, and which amounted at the time of sale, with interest, to five thousand eight hundred and thirteen dollars, it may be questionable whether a better price could have been obtained by selling them separately. The surviving executor, J. G. Hustler, testifies that the sale to Brown was fair and without any collusion with him; and, taking the whole testimony together, we find nothing to contradict his statement, nor to establish the charge of fraud. We consider that there was no error in the proceedings of the court below, and its decree is affirmed.