[No. 11687.  Department Two.  March 7, 1914.]

M. H. INGERSOLL, *as Administrator etc., Respondent,* v. THOMAS H. GOURLEY, *as Executor etc., Appellant.*[1]

APPEAL—DECISION—LAW OF CASE.  A decision on a former appeal that the court had jurisdiction to hear a will contest, becomes the law of the case on a second appeal.

APPEAL—REVIEW—HARMLESS ERROR.  Whether a complaint was demurrable for improperly uniting two causes of action will not be considered on appeal, where one of the causes was abandoned at the trial.

SAME.  Whether a change of judges was erroneously granted is immaterial, where there is a trial *de novo* on appeal.

WILLS—CONTEST—MENTAL CAPACITY OF TESTATOR—INSANITY—EVIDENCE—SUFFICIENCY.  Where a will appears to have been wholly the product of the testator's delusion that his sanctification and redemption depended upon his bestowing his property upon the poor and that his religious teacher was the steward chosen of God through whom this must be done, findings of want of mental capacity are sustained, in the light of all the circumstances and evidence indicating incapacity and a morbid and insane delusion of the character and mission of the legatee, whom he believed to be possessed of superhuman attributes and powers, and it appears that the making of the will was prompted by such delusion.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered July 15, 1913, upon findings in favor of the plaintiff, setting aside a will in a will contest, tried to the court.  Affirmed.

[1]Reported in 139 Pac. 207.

*J. L. Corrigan, M. H. Van Nuys, Morton T. Hunter,* and
*Milo A. Root,* for appellant.

*M. H. Ingersoll* and *Reynolds, Ballinger & Hutson,* for
respondent.

Morris, J.—Appeal from a decree setting aside a will.
The contest was waged upon three grounds; mental in-
capacity of the testator, undue influence, and indefiniteness
and uncertainty of the will.  The contest was sustained upon
the first two grounds, the lower court in its findings and con-
clusions making no reference to the third ground, the only
ruling upon this point being a refusal to adopt a conclusion
of law, proposed by the appellant, that the provision in the
will, attacked by respondent as too indefinite and uncertain,
"is legally not too indefinite and is on its face a valid trust."
A number of assignments of error go to the admission of
testimony, but since the case is triable here *de novo,* they
may be dismissed without discussion.  The first point urged
by the appellant is that the lower court had no jurisdiction
to hear the contest.  This point was fully passed upon ad-
versely to appellant's contention on the first appeal.  *Inger-
soll v. Gourley,* 72 Wash. 462, 130 Pac. 743.

It is next urged that a demurrer to the complaint of ap-
pellant should have been sustained upon the ground that it
improperly united two causes of action, one a contest of the
will and the other a cause of action against the executor for
waste.  We do not deem it necessary to pass upon the ques-
tion whether the complaint was demurrable, since at the
trial the second cause of action, if it can be named as such,
was abandoned and we cannot see any prejudice to appel-
lant.

It is next contended that the lower court erred in grant-
ing a change of judges.  The proceedings were instituted
before Judge Frater in the name of Miranda Crim, mother
of the testator.  She died pending the issue, and Mr. Inger-
soll was appointed administrator of her estate.  Judge

Frater then dismissed the contest upon grounds noted in *Ingersoll v. Gourley, supra.* This judgment was reversed, and the lower court being subsequently reinvested with jurisdiction of the cause, respondent made his motion for a change of judges in the usual form. This motion was granted, and the cause was transferred to and heard by Judge Dykeman. We can find no error. Whether respondent was or was not entitled to the change asked for, is immaterial, since we are to try the cause *de novo.* It is immaterial whether Judge Frater or Judge Dykeman entered the decree complained of. Appellate courts rightfully give some weight to the findings of fact made by the lower court where the testimony is in sharp conflict, for the reason that the lower court, being face to face with the witnesses, noting their demeanor, etc., is better able to judge of their credibility and the weight to be given their testimony. To this extent, the personality of the trial judge enters somewhat into his decree. But we cannot assume that Judge Frater, had he refused the change and heard the proofs, would have reached a different conclusion from that reached by Judge Dykeman.

The findings of incapacity and undue influence are next attacked. This necessitates a more extended reference to the facts. The testator had been a miner in Alaska, and had acquired an interest in a mining property valued at $70,000. He had a cancer, which started on his lip but had progressed so that, at his death, in January, 1911, it had eaten away his cheek and reached his eye. The appellant is the founder of a peculiar religious sect, of which we will speak later. Crim, the testator, first became acquainted with Gourley some time in 1906, and began attending Gourley's church, then located on Seventh avenue, Seattle. In 1907, Crim returned to Alaska and remained there until the fall of 1909, when he returned to Seattle and became a member of a colony established by Gourley and his followers at Ballard Beach. In April, 1910, Crim made his will whereby, after providing for the payment of his debts, he bequeathed one-half of his es-

tate to certain relatives and the other half to Gourley, "in trust for the benefit and use of widows, orphans, and deserving poor."

The will is what is known as a nonintervention will, appoints Gourley as executor without bonds, and clothes him with full power and authority to carry out the trust "in such amounts, at such times, for the benefit of such persons, and in such manner and methods as in his discretion seems best." This clause is the one attacked by contestant as too indefinite and uncertain. We shall, however, not discuss this point, in view of the conclusion we have reached as to the testator's mental capacity.

Gourley and his followers call themselves "Saints of the Lord." The record does not convey a very clear conception of Gourley's religious teachings. We find, however, that he taught his followers that they could only be cured of bodily ills through faith in Christ, and that, in order to obtain this divine healing, they must be wholly sanctified and redeemed from all taint of sin. Gourley was believed to have the power of working miracles, and one of the witnesses relates an instance where, as a result of baptism by Gourley, one of his followers who had been deaf had her hearing restored. Under Gourley's preaching, his followers often became subject to what the witnesses referred to as "The Power," which manifested itself in various forms. Sometimes they rolled on the floor, at others they became stiff and rigid and lost consciousness. It was also a tenet of Gourley's creed, and he so taught his followers, that they should render unto the Lord by giving all their property to the poor, and that for this purpose he, Gourley, was a steward sent by God.

Crim seemed to be a faithful follower and firm believer in Gourley's teachings, and oft so expressed himself to his friends. He refused to submit himself to medical treatment, giving as his reason that the use of medicine would offend the Lord and thus deprive him of divine assistance, and that the only way he could be cured would be through the miracle

working power of Gourley and his prayers and intercessions. One of the witnesses stated that Crim told him that the Lord was going to come down and take him up to Heaven just as he was, and cure him and return him to earth again in seven years. He would "holler and groan." The testimony leaves us in doubt as to whether this was because of his pain and suffering or was a part of the same religious manifestations. At other times, while he was in Alaska before his cancer had developed very far, he' would cry or laugh hysterically without any apparent reason. At this time, some of his close friends who were associated with him in his mining ventures say that they all considered him of unsound mind, and some expressed fear of him because of his condition. Other Alaska friends testified on behalf of appellant that they thought him sane and fully capable of transacting any business. Others say that, in everything he did, he seemed to be influenced by his peculiar religious beliefs, and was unable to do anything independently of his religious belief; and that later, as his cancer progressed, his mind seemed to yield to his physical condition and become enfeebled and impaired, and he seemed subject to morbid influences. A lady, with whom he had lived in his younger days and whom he called "Mamma," called on him frequently while he was at Ballard Beach. She says that often he seemed irrational, did not seem to know her, and his mind seemed to be in a mist. Another witness testified to hearing Gourley tell Crim that if he did not get relief it must be he was withholding something from the Lord. Another old friend says that, on one occasion, Crim told him that his mind had been off for a long time, so that he was incapable of attending to his business affairs and had turned them over to Gourley. Owing to his religious belief, Crim refused medical attention, and the testimony as to his mental condition comes wholly from nonexpert witnesses.

It is difficult to pick out any one thing and say this establishes the mental incapacity of Crim. But, as we read

the record, the conclusion forces itself upon us that Crim was wholly under the domination of his belief that he must account to the Lord for all that he had, that the proper way to so account was to give to the poor, and that for this purpose the Lord had authorized Gourley to act as his steward. The law takes no account of a man's religion. It cannot say that, because one man believes in the generally accepted dogmas, he is sane, and another is insane because he rejects them and announces some new doctrine that may shock the sensibilities or disturb the religious fervor of some devout believer in the so-called orthodox faith. But while this is true, the courts have recognized the fact that a man may, through manifestations of religious belief, evidence mental disorder; and while testamentary capacity is not to be measured by religious belief or opinions, yet, if these opinions are of a nature which produces a will which is wholly the result of them—in other words, if the will in question would not have been made if the testator had not entertained some peculiar religious belief—his testamentary capacity may well be doubted. Underhill, Wills, p. 130.

Applying this thought to the will in question, it seems clear to us that this will was wholly the result of Crim's belief that his sanctification and redemption depended upon his bestowing his property upon the poor, and that Gourley was the steward chosen by God through whom this should be done. We believe this opinion produced this will, and while, as we have before said, it is difficult to point to any one fact as of itself establishing this belief, the record as a whole, in the light of all the circumstances, convinces us that the will was the product of this delusion, and that Crim, from the time he came under the influence of Gourley, was the victim of a morbid and insane delusion as to the character, power, and mission of Gourley, believing him to be possessed of superhuman attributes and powers and charged with a mission beyond that committed to ordinary men; and that in making his will he was influenced by that delusion. The be-

liever in such a delusion is insane on that subject and, when it appears that he is prompted by that delusion to make a will, the will cannot be sustained. *Orchardson v. Cofield,* 171 Ill. 14, 49 N. E. 197, 63 Am. St. 211, 40 L. R. A. 256; *American Bible Society v. Price,* 115 Ill. 623, 5 N. E. 126.

The will itself, to our minds, evidences this, in making the bequest to Gourley for the benefit of widows, orphans, and the poor, without qualifications of any kind except the discretion of Gourley, a discretion without limitation as to time or manner of its exercise except the will of Gourley.

We believe, for these reasons, that the will cannot be sustained because of the mental incapacity of the testator, and the judgment is affirmed.

CROW, C. J., MOUNT, and FULLERTON, JJ., concur.