[No. 12744.  Department One.  January 28, 1916.]

*In the Matter of the Estate of* LESLIE L. CRIM,
W. K. MINER, *Appellant.*[1]

EVIDENCE — PAROL EVIDENCE TO VARY WRITING — ADMISSIBILITY. Parol evidence of an agreement is not objectionable as varying the terms of a written contract, where the agreement rested in parol and the writing was not contemporaneous or for the purpose of evidencing the contract, but was made a month later merely to satisfy the banker of one of the parties.

APPEAL—REVIEW—FINDINGS. A finding cannot be disturbed on appeal where the evidence does not preponderate against it.

APPEAL—REVIEW—FINAL ORDERS—CONFIRMING PROBATE SALE. An order in probate on proceedings by petition, confirming the sale of personalty, is a final disposition of the matter, and appealable within ninety days, under Rem. & Bal. Code, § 1716, subd. 1, relating to appeals from final judgments.

EXECUTORS AND ADMINISTRATORS—SALES—RATIFICATION OF VOIDABLE SALE—REVOCATION OF LETTERS. An executor's sale of personalty, prior to the probate of a nonintervention will, fairly done to preserve

[1]Reported in 154 Pac. 811.

the estate from forfeiture and to pay debts, is voidable merely, and not void; and the admission of the will to probate and appointment of the executor by a court of competent jurisdiction ratifies the sale, notwithstanding the probate was thereafter annulled because of testamentary incapacity.

SAME—SALE TO PAY DEBTS—FAIR PRICE—EVIDENCE—SUFFICIENCY. Where the only property of an estate consisted of mining stock of speculative value, pledged by decedent for a loan, for which it was about to be forfeited, and no one else was willing to purchase the stock at any price, a sale of one-fourth of the stock for $790, is fair, and should be confirmed, although it was represented to the purchaser that there was a prospect of selling all of the stock for $70,-000.

Cross-appeals from a judgment of the superior court for King county, Frater, J., entered February 6, 1915, in favor of the petitioner, in proceedings in probate for the confirmation of a contract made with the executor of a will. Affirmed.

*Milo A. Root*, for appellant Miner.

*C. D. Murnane* and *Ballinger & Hutson*, for respondent and appellant Tremper.

ELLIS, J.—This case arises on a petition in probate for the confirmation of a contract with an executor of a will, which will was subsequently declared void for lack of testamentary capacity and undue influence, and for delivery to the petitioner of certain shares of stock claimed by him under the contract.

Leslie L. Crim died, leaving a purported nonintervention will. One Gourley was named therein as executor and trustee. The estate consisted of two hundred thousand shares of the capital stock of Lost River Tin Mining Company, a corporation owning the inchoate title to an unpatented tin mining claim in Alaska. The other assets were admittedly so insignificant as to be negligible.

Some time prior to his death, Crim had executed a promissory note to the Scandinavian American Bank of Seattle, and had deposited all of the certificates of this stock with the bank to secure payment of the note. Shortly before its ma-

turity, the bank transferred the note to one Sadie E. Smith, who, as it appears, intended to forfeit the pledged stock on the maturity of the note in default of payment. At the time of the transaction here in question, the debt evidenced by the note amounted, with interest, to $790. There were other debts amounting to $460. Prior to probating the will, but assuming to act under it, Gourley sought to procure a loan upon, or to sell a part of, the stock to raise money to redeem the stock and pay these debts. Failing elsewhere, as he testified, he applied to the petitioner, Miner, and on September 5th, 1911, it was agreed between them that, in consideration of a sale to him of one-fourth of the stock, Miner would pay to Gourley $1,250 with which to redeem the stock and pay the other debts. Pursuant to this agreement, on that day the money was paid to Gourley, who at once made a tender of the amount of the note to the bank, and a few days later to the attorney for Sadie E. Smith. These tenders were refused.

The only conflict in the evidence is as to the agreement between Gourley and Miner. Gourley testified that Miner was to receive only one-fourth of the stock. In this he is corroborated by another witness to whom Miner applied for a loan of the money, and who testified that Miner then told him he was to receive one-fourth of the estate. Miner testified that the original agreement was that he should receive one-half of the stock. In this he is corroborated by his wife, who was present when the agreement was made.

On October 3, 1911, Gourley sent to Miner a paper as follows:

"Islandale, Washington, October 3, 1911.

"This is to certify that whereas the estate of Leslie L. Crim is incumbered by a certain note, due September 8, 1911, and unpaid, and having no funds of the estate to meet payment of said note and other indebtedness now due, and acting under clause 2 of the last will of Leslie L. Crim, which authorizes me as executor and trustee to pay out of his estate all debts outstanding, I hereby agree for the sum of $1,250 to me paid

to assign 100,000 shares of the capital stock of the Lost River Tin Mining Company, of Alaska, as soon as the same is transferred to me upon the books of said company, to W. K. Miner.                    (Signed)   T. H. Gourley."

Gourley explained that this was given to satisfy a bank to which Miner owed money; that the bank had threatened Miner with proceedings for a receivership, and that this paper was given to Miner to exhibit to the bank, and that it was without other consideration.   Miner admitted that the agreement was reduced to writing to satisfy his banker, but testified that it embodied the true terms of the original verbal agreement of September 5th.

The will was probated September 18, 1911.   Gourley was appointed executor pursuant to its terms, and entered upon the management of the estate.   He brought an action against Sadie E. Smith for the recovery of the stock, and paid the $790 into court in that action to keep his tender good.   That action finally resulted in a judgment in Gourley's favor, which judgment, on February 28, 1914, was affirmed by this court on appeal.   *Gourley v. Smith,* 78 Wash. 286, 139 Pac. 58.

Meanwhile a contest of the will was instituted, which resulted in a decree setting aside the will on the grounds of testamentary incapacity and undue influence.   On appeal that decree, on March 7, 1914, was affirmed by this court. *Ingersoll v. Gourley,* 78 Wash. 406, 139 Pac. 207, Ann. Cas. 1915 D. 570.   E. P. Tremper was then appointed, qualified, and is now acting, as administrator *de bonis non* of the estate.   In this proceeding, which had been held in abeyance pending the contest of the will, the trial court, on February 6, 1915, entered a decree ratifying and confirming the sale of stock by Gourley to Miner, but finding that it was only for one-fourth of the stock—fifty thousand shares—instead of one-half, or one hundred thousand shares, as claimed in the petition.   From that decree, the petitioner prosecutes an appeal, and the administrator *de bonis non* a cross-appeal.

The appellant contends that the writing of October 3, 1913, cannot be controverted by parol evidence, and that, in any event, the court erred in finding that the agreement was for fifty thousand instead of one hundred thousand shares.

The first claim is effectually answered by the fact that the writing of October 3d was not a contemporaneous writing intended to evidence the contract. It was written almost a month after the contract had been fully performed on Miner's part. It was admittedly made, not for the purpose of evidencing the contract as between the parties, but for the sole purpose of satisfying Miner's banker. When the original agreement was made and the money paid by Miner, there was no intention that the agreement should ever be reduced to writing. The writing was based upon no new consideration. Unless it did in fact embody the terms of the actual agreement upon which the money was paid, it could not be binding upon the estate so as to estop the representative of the estate to question its terms. Parol evidence of the agreement of September 5th, as made and performed by Miner, was properly admitted.

As to whether the original agreement was a sale of fifty thousand or one hundred thousand shares, the evidence is in sharp conflict. We have attentively studied the record. We cannot say that the evidence preponderates against the court's finding.

The appellant moves to dismiss the cross-appeal as tardily taken. The notice was given more than fifteen days but less than ninety days after the entry of the decree. The appellant claims that the cross-appeal falls under subdivision 6 of § 1716, Rem. & Bal. Code (P. C. 81 § 1183). It is clear, however, that it falls under subdivision 1 of that section. Though the proceeding was by petition in the probate of the estate, the decree was a final disposition of the matter in controversy. The time for appeal was therefore ninety days. *State ex rel. Keasal v. Superior Court*, 76 Wash. 291, 136 Pac. 147. The motion is denied.

The cross-appellant contends that the contract was not merely voidable but void; that the will having been declared void for lack of testamentary capacity and undue influence, the sale was thereby annulled. The case of *Wallace v. Grant*, 27 Wash. 130, 67 Pac. 578, is cited and relied upon. In that case, an administrator mortgaged real estate under an order of court based upon a petition affirmatively showing that the personal property of the estate had not been exhausted, and there was no showing that the estate was actually the recipient of the money loaned. That case is readily distinguishable from the one before us.

Had the will in the case here never been held invalid, there could be no question that the sale, if a fair one, would have been valid and binding upon all persons interested, since the stock was the only asset and the sale was made for the purpose of raising money to save the balance of the stock and to pay debts of the estate, and it is admitted that the money was so used. Under the will, no bond was required of the executor and no order of court was necessary for such a sale. The subsequent probate of the will, therefore, in effect ratified the sale. The probate of the will supplied all that was necessary to establish the authority to make the sale. That is all that an order ratifying a sale could do even in a case where an order of sale would have been necessary. This is self-evident. The order admitting the will to probate was made by a court of competent jurisdiction. It had jurisdiction of the subject-matter. A different case would be presented had the assumed testator been still alive. The order was not void, but only voidable. Things, therefore, done under it, or ratified by it, *if necessary to and fairly done in the due and legal course of administration,* such as raising money to pay the debts and preserve the assets, are valid and binding upon all interested.

"And the rule to be favored at the present day is, that all acts done in the due and legal course of administration are valid and binding on all interested, even though the letters is-

sued by the court be afterwards revoked or the incumbent discharged from his trust. And although one's appointment as executor or administrator may have been erroneous, or voidable, the safer doctrine is, that the letters and grant issued from the probate court shall not be attacked collaterally where the court had jurisdiction at all, and least of all by common-law courts; and that the acts of the representative *de facto* shall bind the estate and innocent third parties." 2 Schouler, Wills, Executors and Administrators (5th ed.), pp. 1121, 1122.

The case of *Brown v. Brown*, 7 Ore. 285, presents a state of facts in the main closely analogous to that presented here. The court said:

"The fourth point relied on by the appellants as a defense is that the will having been declared void by the probate court, the sale of the land to the respondents was thereby annulled. We hold the law to be otherwise. The probate court had exclusive jurisdiction of the subject-matter in regard to the probate of what purported to be the will of Cyrus Olney. It was duly proved to be his will before that court, and letters testamentary were issued thereon, and until these proceedings were annulled the validity of the will could not be collaterally drawn in question by any one, nor by any other court. Administration of the estate under it could be conducted and enforced, as under any other will duly proved. Such being the case all acts done in the due course of administration, while the will remained unannulled, and the letters testamentary were unrevoked, must be held entirely valid."

In *Foster v. Brown*, 1 Bail. L. (S. C.) 221, 19 Am. Dec. 672, speaking of a sale by an administrator who had fraudulently suppressed a will, the court said:

"It is true that, on the revocation of an administration, for whatever cause, he to whom the subsequent administration is granted may maintain trover against the first administrator for goods of the deceased which he has converted to his own use. But it is equally clear that all acts done in the due and legal course of administration are valid and binding on all interested, although it be afterwards revoked. *Benson v. Rice and Byers*, 2 N. & M. 577. Nor can the manner of

obtaining the administration, whether fairly or fraudulently, vary the question. Suppose it fraudulently obtained, yet if the administrator pays the debts of the estate, or does any other act which a rightful administrator would be bound in law to do, thus far, at least, it would be fair, and for the most obvious reasons would be binding."

*Mutatis mutandis* the language quoted applies with even more force to the case here.

As said in *Kittredge v. Folsom*, 8 N. H. 98:

"There is evidently an inaccuracy in the use of the term *void*, in many instances in the books, upon this and other subjects; and the attempt to reconcile all the authorities upon the matter now under consideration must be in vain. An administration granted by the competent authority, upon a proper case made, can with no propriety be termed a nullity, and all the acts of the administrator held to be void, notwithstanding a will may afterwards appear and the administration be revoked. 6 *Co.* 19, *Packman's case; 2 Lev.* 90, *Semine v. Semine.* The acts of such administrator must be quite as valid as those of an executor under a will which has been revoked by the testator. The grant of administration confers an existing authority, which cannot be resisted or disregarded until the will appears. 1 *Lev.* 235; *Noel v. Wells.* The administrator in such case comes into his office by color of an authority. *Plowe.* 282. He is administrator *de facto,* and his acts, done in due course of administration, must be valid, at least so far as third persons are concerned. 7 *N. H. R.* 131."

See, also, *Shephard v. Rhodes*, 60 Ill. 301; *Roderigas v. East River Savings Institution*, 63 N. Y. 460, 20 Am. Rep. 555; *Thompson v. Samson*, 64 Cal. 330, 30 Pac. 980; *Foulke v. Zimmerman*, 14 Wall. (U. S.) 113.

We do not say that we would go as far as some of the cases which we have cited go, but we do say that they furnish ample authority for the view that Gourley was administrator *de facto* until his appointment was revoked; that the sale of the stock was not void but only voidable, and cannot be avoided, as against the purchaser, Miner, if found to be fair

and for the benefit of the estate, and we so hold. A different case would be presented had the sale been made by a devisee, as such, under a void will and solely for his own benefit. *Hughes v. Burriss*, 85 Mo. 660.

It remains, therefore, only to inquire whether the sale was, under the circumstances, a fair one. It was clearly for the benefit of the estate that the stock be saved from forfeiture and that the debts of the estate be paid. It is fairly apparent that no one but the appellant, Miner, was willing to advance the money for this purpose on any terms. The value of the stock was purely speculative. Though Gourley represented to Miner at the time that he had a sale in prospect which would net $70,000 for all of the stock, it was only a prospect. The fact remains that at least $790 had to be raised at once in order to save the stock, whatever its value, and there is not the slightest evidence that even that amount could have been raised in any other manner or on better terms than those accepted by Miner. There is no evidence that Miner, at least, acted otherwise than in good faith. He was willing to take a chance that others would not take. The cross-appellant concedes that he is entitled to a return of his money with interest, but the contract was not for a loan, it was a sale. We find no warrant in the evidence for holding the contract void. Having taken a chance which has resulted in preserving to the heirs whatever of value there is in the estate, we think Miner is entitled to the benefit of his contract.

Affirmed.

MORRIS, C. J., CHADWICK, MOUNT, and FULLERTON, JJ., concur.