Battle, J.
 

 The pleadings, in this ease, present the question, whether the Court of Equity, in this State, has the power to issue a commission for the purpose of having the inquisition of a jury, whether a person be an idiot or lunatic; or, in other words, whether it has jurisdiction of the enquiry, whether idiot or lunatic or not. This is an important and interesting question, and one which has not hitherto, so far as we are-aware, been brought before this Court for adjudication. In the investigation of this subject, it may aid us to ascertain in what court or person this jurisdiction was vested in England.
 

 Mr. Ad'ams in his treatise on Equity, after speaking of the-jurisdiction of the Court of Chancery in relation to infants, and the mode in which it is called into operation by the filing-of a bill, to which the infant- is a party, makes the following remarks upon the subject of lunacy: “The similarity of principle between the jurisdictions in infancy and lunacy, would lead us to anticipate their exercise through the same channel, and in the same form of procedure, viz., through the Court of Chancery in a regular suit. In this respect, however, a material distinction exists. The jurisdiction in lunacy is-exercised, not by the Court of Chancery in a regular suit, but,, by the Lord Chancellor personally on petition-and the- appeal, if his order be erroneous, is to the Xing, in< council, and not to the House of Lords.” Adams’ Eq. 290. The mere lunacy does not originate the jurisdiction, bu-t there m-ust be an-inquisition by a jury, finding the- fast, that the person is a lunatic. To do this, the regular eo-u-rse is to issue a commission under the great seal in the nature of a writ
 
 de Iwnatieo inqui-
 
 rendo, to ascertain whether the party is of unsound mind. This mode of proceeding has superseded “ the old way which was by writs directed to the sheriff or escheator.” See Stock on Hon Compotes, (15 Law Lib. marginal page, 86, et seq.) where the subject is fully discussed and explained. The proceedings under the commission in England, are now regula
 
 *419
 
 ted by statute. Adams’ Eq. 292, which refers to 3 and 4 Will. 4 ch. 36; 5 and 6 Vict., ch. 84, and 8 or 9 Vict. ch. 100, sec. 2. In this country, under the Colonial Government, there can be very little doubt that the Court of Chancery had, and exercised jurisdiction over idiots and lunatics and their estates
 
 (Latham
 
 v. Wiswall, 2 Ire. Eq. 300,) but as to the mode in whioh the fact of idiotcy or lunacy was to be ascertained, we-, have not now and here the means of learning. Soon after the Kevolution, courts of Equity were established in this State by an act of the General Assembly, which declared, in express terms, that they should “ possess all the powers and authorities within the same, that the Court of Chancery, which was formerly held in this State under the Colonial Government, used and exercised, and that are properly and rightfully incident to such a court, agreeably to the laws in force in this State.” See Act of 1782, (ch. 177, sec. 2, of the Rev. Code of 1820,) 1 Rev. Stat., ch. 32, sec. 1; Revised Code, ch. 32, sec. 1. Two years after the establishment of courts of Equity, in this State, jurisdiction was conferred upon the Courts of Pleas and Quarter Sessions, commonly called County Courts-, to appoint guardians for idiots and lunatics, who were possessed of property, real or personal, and to take bonds for the faithful administration of the trust reposed in them, as in the case of the appointment of guardians for orphans, but it was expressly provided that the idiotcy or lunacy was to bo ascertained
 
 “
 
 by the inquisition of a jury by virtue of a writ, to be issued by such court to the sheriff of the county for that purpose.” See Act of 1784, (ch. 228, of the Rev. Code of 1820,) 1 Rev. Stat., ch. 57, sec. 1, Revised Code, ch. 67, sec. 1. The effect of this act has been, in our opinion to confer upon the county courts original and exclusive jurisdiction to issue writs, from time to time, as may be necessary for the purpose of ascertaining by the inquisition of a jury, whether a party be an idiot or lunatic, or if he had been once found to be a lunatic, whether, he had become of sound mind again ; and to make all orders that may be necessary upon the return of the inquisition. After an idiot or lunatic has been thus found to bo
 
 *420
 
 such, and put under guardianship by the County Court, there is no doubt that the Court of Equity has, either inherently or by statutory provision, j urisdiction over his estate, both real and personal, and has power to direct the sale of the same, or any part thereof, and to make all needful orders for the application of the proceeds to the necessities of the idiot or lunatic and his family. See 1 Rev. Stat. ch. 57, sec. 3 — Revised Code, chap. 57, sec. 3, and also
 
 Latham
 
 v.
 
 Wiswall,
 
 2 Ire. Eq. 294; Ex parte Latham, 4 Ire. Eq. 231, S. C. 6 Ire. Eq. 406, and many other cases. In all the reported cases which we have examined, in which questions relating to the estate of an idiot or lunatic were brought before the Court of Equity, we have found, that the inquisition of lunacy was taken under the authority of the County Court. See
 
 Allison
 
 v.
 
 Campbell,
 
 1 Dev. and Bat. Eq. 152;
 
 Tally
 
 v.
 
 Tally,
 
 2 Dev. and Bat. Eq. 385;
 
 Christmas
 
 v.
 
 Mitchell,
 
 3 Ire. Eq. 535.
 

 Our conclusion is, that the Court of Equity for the county of "Wilkes, had -no authority to make the order for an inquisition by a jury as to the lunacy of the plaintiff, and that consequently such order was erroneous and must be reversed, and to that end, this opinion must be certified as the law directs.
 

 PeR Cubiam, Order reversed.