[No. 11158.   Department One.   September 10, 1913.]

*In the Matter of the Guardianship of*
**E. DOROTHY WILLIAMSON.**[1]

GUARDIAN AND WARD — ACCOUNTING —— JURISDICTION —— CLAIMS
AGAINST GUARDIAN PRIOR TO APPOINTMENT. In view of the fact that
the superior court is not a court of exclusive probate jurisdiction,
but has all the powers of a court of equity, and in view of Rem. &
Bal. Code, § 1659, making it the duty of a guardian to take posses-
sion of all effects and evidence of debt of the ward, and Id., § 1663,
making it his duty to collect all debts due the ward, the court has
jurisdiction in the final accounting to compel the guardian to ac-
count for all sums received prior to his voluntary assumption of the
guardianship, which is a submission to the jurisdiction of the court;
and, also, to cancel a settlement which the court found to be fraud-
ulent and void.

GUARDIAN AND WARD—ACCOUNTING—CONTESTS—COSTS. Upon the
final settlement of a guardian's contested account, the court cannot
allow attorney's fees to the ward beyond the statutory costs allowed
in an adversary proceeding.

Appeal from a judgment of the superior court for Kitsap
county, Still, J., entered September 24, 1912, upon findings
in favor of a ward, upon settlement of a guardian's final ac-
count.   Modified.

*Carr & Gregory*, for appellant
*B. S. Grosscup* and *W. S. Morrow*, for respondent.

PARKER, J.—This is an appeal by Mrs. Linda Burfield
Hazzard from a decree of the superior court of Kitsap coun-
ty, settling her final account as guardian of Miss E. Dorothy
Williamson.   The facts determinative of the questions here
presented are, in substance, as follows:

During the period here involved, Mrs. Hazzard held a
license as a practicing physician from the state of Washing-
ton, and practiced as such, principally by having her pa-

[1]Reported in 134 Pac. 1066.

tients fast for cure of their ailments. On February 26, 1911, Miss Williamson became a patient of Mrs. Hazzard, soon thereafter going to live with Mrs. Hazzard. After being treated by Mrs. Hazzard for some three weeks, Miss Williamson became so greatly reduced in physical and mental strength that she was confined to her bed with frequent periods of delirium. About this time, Mrs. Hazzard, by frequent visits and solicitations, had obtained the ascendency over Miss Williamson and came into control of her business affairs and personal conduct. Thereafter and prior to July 3, 1911, Mrs. Hazzard obtained possession of moneys in various sums belonging to Miss Williamson, aggregating $1,324. On May 26, 1911, Mrs. Hazzard filed, in the superior court for Kitsap county, her petition asking that she be appointed guardian of the person and estate of Miss Williamson, upon the ground that Miss Williamson was incapable of attending to her own affairs; and thereafter, on July 3, 1911, Mrs. Hazzard procured from the superior court an order appointing her such guardian. This was done without the knowledge of Miss Williamson or any of her relatives or friends. On July 31, 1911, this appointment was by the court vacated and set aside, upon the ground that Miss Williamson was not incompetent or incapable of managing her own affairs, and Mrs. Hazzard was thereupon ordered forthwith to render a full account of her guardianship. A few days before the entering of this order, Mrs. Hazzard had obtained from Miss Williamson the further sum of $250, and also a promissory note executed by Miss Williamson for the further sum of $250. This $500 Mrs. Hazzard claims was voluntarily given to her by Miss Williamson as the balance due for treatment and services rendered, and that such settlement was made looking to the formal discharge by the court of Mrs. Hazzard as guardian. The court evidently treated this settlement as having been procured through fraud and coercion and, therefore, of no binding force upon Miss Williamson.

Thereafter Mrs. Hazzard, in compliance with the order of the court, filed a report in which she accounted for certain personal property consisting of personal effects and jewelry, but denied that she had received any money as guardian of Miss Williamson, though acknowledging that she had received certain sums before her appointment as guardian, which were applied by her in payment for services and treatment rendered Miss Williamson. These sums, however, she insisted she was not obliged to account for as guardian. Upon exception to this report and account being filed by Miss Williamson, the court, over objection of counsel for Mrs. Hazzard, went into the question of accounting between Mrs. Hazzard and Miss Williamson as to all sums received by Mrs. Hazzard belonging to Miss Williamson, before as well as after the appointment of Mrs. Hazzard as guardian. Upon the conclusion of the hearing, the court found the facts as we have above summarized them, and decreed that there was a balance due from Mrs. Hazzard to Miss Williamson of $856.76, after making reasonable allowance for service and treatment rendered to Miss Williamson; and also decreed that the $250 note be cancelled, and further awarded Miss Williamson judgment against Mrs. Hazzard in the sum of $150 for attorney's fees as part of her costs and disbursements incurred upon the hearing. From this disposition of the matter, Mrs. Hazzard has appealed.

The principal contention of counsel for appellant is that the superior court is without jurisdiction in the guardianship proceeding to compel her to account for moneys received from Miss Williamson before the commencement of the guardianship by formal appointment, since she is making claim to such sums as her own, claiming to have received them in payment of services, treatment and expenses incurred in Miss Williamson's behalf. This contention is rested upon a general rule that the rights of strangers to an estate, claiming property adversely thereto, cannot, over their objections, be determined in the probate proceeding in which the estate

is being administered, nor otherwise than by a civil action instituted for that purpose, citing *Stewart v. Lohr*, 1 Wash. 341, 25 Pac. 457, 22 Am. St. 150; *In re Alfstad's Estate*, 27 Wash. 175, 67 Pac. 593; and *In re Belt's Estate*, 29 Wash. 535, 70 Pac. 74, 92 Am. St. 916. The argument of counsel apparently is, in substance, that, as to all such sums claimed by Mrs. Hazzard, she is a stranger to the guardianship estate, and that, therefore, she cannot be required to account for such sums in the guardianship proceedings. If this guardianship matter were pending in a court of exclusive, statutory probate jurisdiction, instead of a court possessing general equity powers, there might be some plausible grounds upon which to rest counsel's argument. In the case of *In re Sall*, 59 Wash. 539, 110 Pac. 32, 626, 140 Am. St. 885, this court had occasion to notice the nature and extent of the jurisdiction of the superior courts of the state in the guardianship of the estates of incompetent persons. It was there held that the jurisdiction of the superior courts in such matters is not limited like that of an exclusive probate court proceeding under statutory power, but that it proceeds with all the incidental powers of a court of equity. It is apparent, therefore, that the superior court of Kitsap county had jurisdiction, as a court of equity, by way of an accounting, over the subject-matter of every question that it determined in the settlement of the account of Mrs. Hazzard, and the only way Mrs. Hazzard could escape the effect of the court's accounting decree upon her relations with Miss Williamson prior to the actual commencement of the guardianship by appointment of the court, would be to successfully show that the court did not have jurisdiction over her person for the purpose of adjudicating such matters. This, we think, she has not successfully done, in view of the fact that she voluntarily became the guardian of the estate of Miss Williamson. By this, we think, she voluntarily submitted herself to the jurisdiction of the court, not only for the purpose of rendering herself accountable in that pro-

ceeding for all sums coming into her hands belonging to
Miss Williamson after the formal commencement of the guard-
ianship proceeding by her appointment, but also as to all
sums coming into her hands belonging to Miss Williamson
prior to the commencement of such guardianship proceed-
ings, in so far as she was accountable to Miss Williamson
for such sums for any cause.

The duties of guardians of this nature, in so far as col-
lecting and conserving the property of their wards is con-
cerned, is prescribed by Rem. & Bal. Code, as follows:

"Sec. 1659. It shall be the duty of such guardian to col-
lect and take into his possession the goods, chattels, moneys,
effects, and other evidences of debt, and all writings touching
the estate, real and personal, of the person under his guard-
ianship."   (P. C. 409 § 757).

"Sec. 1663. Every such guardian is authorized and re-
quired to collect all debts due to his ward, and give acquit-
tances and discharges thereof, and adjust, settle, and pay
all demands due and becoming due from his ward, so far as
his estate and effects will extend."   (P. C. 409 § 765).

Manifestly, had Mrs. Hazzard, after her appointment as
guardian, found any sums due Miss Williamson from other
persons, it would have been her duty to collect the same.   Of
course, she cannot sue herself and thus enforce collection of
such sums from herself by legal process.   There is mani-
festly no way by which the amounts of any such sums due at
the time of her appointment as guardian may be adjudicated
while that appointment continues other than by her account-
ing in the court which appointed her guardian.   The ques-
tion of debts due from the ward to the guardian at the time
of the commencement of the guardianship has arisen in suits
upon bonds of guardians where it was sought to recover from
guardians and their bondsmen debts due by guardians to their
wards prior to appointment, upon the theory that they
were required to account for such sums as guardian.   In a
controversy of this kind, in *Mattoon v. Cowing*, 13 Gray 387,
the court held:

"A guardian is responsible on his general bond, for money due from him to his ward at the time of his appointment, and for the rent of real estate occupied by the guardian before that time."

In a similar controversy in *Sargent v. Wallis*, 67 Tex. 483, 3 S. W. 721, the court said:

"The bond of the guardian bound him, not only to account for and pay over such money or other effects of his ward as came into his hands, but also to faithfully discharge the duties of guardian of the estate of his ward according to law. The bonds were the property of his ward, and it was his duty continuously, from the time of his first qualification, to regain and maintain possession of them; and the fact that his own act, before he became the guardian, rendered such action necessary, in no way relieved him from that duty. For the faithful discharge of this duty the sureties on the last bond were as much bound as were those on the first. If the person who held the bonds through the hypothecation, or any other person, came into their possession through illegal means, with which the guardian was in no way connected, before his appointment or afterwards it certainly would have been his duty to recover them, as any other property belonging to the ward's estate; and the fact that he was an actor in the illegal diverson certainly cannot relieve him or his sureties from liability for his failure of duty in this respect. 'The guardian of the estate shall use due diligence to collect all claims or debts owing to the ward, and to recover possession of all property to which the ward has a title or claim; provided, there is a reasonable prospect of collecting such claim or debts, or of recovering such property; and, if he neglects to use such diligence, he and his sureties shall be liable for all damages occasioned by such neglect,'—is the plain declaration of the statute.     (Rev. Stat., art. 2546, 2616.)

"If we regard the guardian as having been a debtor to his ward's estate, on account of what transpired before his appointment, the position of himself and sureties would be no better. If a person appointed executor, administrator, or guardian be a debtor, admittedly, at the time of his appointment, to the estate of which he is made the representative, having voluntarily assumed the trust, and his sureties hav-

ing obligated themselves that he will faithfully execute it, and thus prevented the appointment of any other person, and being unable to sue himself, he must, in legal contemplation, be considered to have paid the debt to himself and to continuously hold the money, so long as his representative character continues, and his sureties, as well as himself, therefore liable for it. (*Winship v. Bass*, 12 Mass. 198; *Leland v. Felton*, 83 Mass. 533; *Mattoon v. Cowing*, 79 Mass. 387; *Ipswich Manufacturing Co. v. Story*, 46 Mass. 313; *Stevens v. Gaylord*, 11 Mass. 269; *Avery v. Avery*, 49 Ala. 193.) The indebtedness of the guardian would be assets, for which as other assets, he and his sureties must account."

The following authorities lend support to these views: *Todd v. Davenport*, 22 S. C. 147; *Matter of Noll*, 10 App. Div. 356. 41 N. Y. Supp. 765; *Johnson v. Hicks' Guardian*, 97 Ky. 116, 30 S. W. 3; *McGill v. O'Connell*, 33 N. J. Eq. 256.

We are of the opinion that the learned trial court had jurisdiction to compel Mrs. Hazzard to account for all sums she had received prior to the guardianship appointment as well as for all received thereafter, and that this included the power to cancel the note which was given in the settlement between Miss Williamson and Mrs. Hazzard, which settlement the court held to be fraudulent and void as against Miss Williamson, and that the voluntary assumption of the guardianship trust by Mrs. Hazzard amounted to a voluntary submission to the court's jurisdiction on her part in so far as it was necessary to acquire jurisdiction over her person.

It is further contended by counsel for appellant that the trial court erred in awarding judgment for $150 attorney's fee against Mrs. Hazzard and in favor of Miss Williamson. As between those two, the settlement of this account by the court was clearly an adversary proceeding. Hence the court, in effect, awarded an attorney's fee beyond the statutory fees allowed in that behalf in favor of the successful litigant. Our repeated decisions are to the effect that this cannot be done. There are no attorney's fees as between litigants, under

our law, other than those specifically prescribed by statute. This is true whether the controversy involved be such as might have been heretofore denominated legal or equitable. Our decisions have been the same in both classes of cases. *Larson v. Winder*, 14 Wash. 647, 45 Pac. 315; *Trumble v. Trumble*, 26 Wash. 133, 66 Pac. 124; *Legg v. Legg*, 34 Wash. 132, 75 Pac. 130; *Criswell v. Directors School Dist. No. 24*, 34 Wash. 420, 75 Pac. 984; *Spencer v. Commercial Co.*, 36 Wash. 374, 78 Pac. 914; *McGill v. Fuller & Co.*, 45 Wash. 615, 88 Pac. 1038; *State ex rel. Maltbie v. Will*, 54 Wash. 453, 103 Pac. 479, 104 Pac. 797; *McGuinness v. Hargiss*, 56 Wash. 162, 105 Pac. 233; *Bennett v. Seattle Elec. Co.*, 56 Wash. 407, 105 Pac. 825.

In support of the contention that such attorney's fees are allowable in controversies of this kind, counsel call our attention to *Baker v. Seattle-Tacoma Power Co.*, 61 Wash. 578, 112 Pac. 647, Ann. Cas. 1912 C. 859. That was a suit brought by one stockholder of a corporation in behalf of himself and all other stockholders to recover property for the benefit of the corporation, being a suit necessitated by refusal of those in charge of the corporate affairs to seek such recovery. The litigation resulted in the recovery sought. The court awarded counsel fees in favor of the plaintiff against the corporation; not against the person from whom the recovery was had. This was not the awarding of attorney's fees against the losing party in the case. The award was made in compliance with the general rule that equity may impose the burden and expense of necessary litigation, including counsel fees, upon the trust fund for the benefit of which the litigation is successfully maintained. *Trustees v. Greenough*, 105 U. S. 527. We are of the opinion that the awarding of judgment against Mrs. Hazzard for $150 as attorney's fees in favor of Miss Williamson was erroneous.

We conclude that the decree must be affirmed in so far as it settles the accounts of Mrs. Hazzard as guardian of Miss

Williamson, and that it must be reversed in so far as it awards judgment in favor of Miss Williamson against Mrs. Hazzard for $150 attorney's fee. In view of this disposition of the cause, we conclude that neither party should recover costs in this court.

It is so ordered.

CROW, C. J., CHADWICK, GOSE, and MOUNT, JJ., concur.