[No. 11486.   Department One.   November 1, 1913.]

THE STATE OF WASHINGTON, *on the Relation of F. A. Keasal, Plaintiff*, v. THE SUPERIOR COURT FOR PIERCE COUNTY *et al., Respondents.*[1]

CERTIORARI—WHEN LIES—INADEQUACY OF REMEDY BY APPEAL—EXECUTORS AND ADMINISTRATORS—APPOINTMENT—REVIEW. The remedy by appeal is inadequate and certiorari lies to review an order refusing to appoint an administrator of partnership property, where it appears that the time for performance of the contract by which the partnership was formed will expire, and the six months limited by Rem. & Bal. Code, § 1438, for the administration of partnership estates will have elapsed, before an appeal can be heard.

COURTS—JURISDICTION—POWERS IN PROBATE OF COURTS OF GENERAL JURISDICTION. Const., art. 4, § 6, conferring original jurisdiction upon the superior courts generally of all matters of probate, together with Rem. & Bal. Code, § 1278 enumerating the powers to be exercised,

[1]Reported in 136 Pac. 147.

merely throws probate matters into the aggregate jurisdiction of the superior courts without limiting the general jurisdiction of superior courts, when sitting in probate, to exclusively probate proceedings.

EXECUTORS AND ADMINISTRATORS — APPOINTMENT — PARTNERSHIP PROPERTY—JURISDICTION TO DETERMINE PARTNERSHIP.   Under Rem. & Bal. Code, §§ 1436-1438, conferring upon the surviving partner the right to administer the partnership estate, and providing that, if he be not appointed, the general administrator shall give an additional bond and administer the estate, upon petition by a surviving partner for letters of administration upon the partnership estate, the superior court, sitting in probate, has jurisdiction to determine the fact of partnership, and make the appointment, even though the partnership be denied by the general administrator.

SAME—TIME FOR APPLICATION.   Rem. & Bal. Code, § 1437, requiring a surviving partner to apply for letters of administration upon the partnership estate within five days from the filing of the  inventory, merely fixes a limit within which the application may be made and does not prohibit consideration of an application made before the filing of the inventory.

CERTIORARI—TIME FOR APPLICATION—FINAL JUDGMENTS.   An order denying an application for letters of administration as prematurely made is interlocutory, but a denial of the application for want of jurisdiction because the existence of the partnership was not conceded is a final determination affecting a substantial right, review of which by certiorari is in time if application is made within 90 days, the time for taking an appeal therefrom.

JUDGMENT—RES JUDICATA—REVIEW—QUESTIONS PRESENTED.   Where a surviving partner's application for letters of administration upon the partnership estate was denied by a final order, and such denial was pleaded as res judicata and a bar to a subsequent application, and a writ of certiorari was applied for within the time allowed for taking appeal from the first order, which brought up for review the whole record of the proceedings, the supreme court is not precluded from reviewing the first order by the plea of res judicata, since the question of res judicata is not involved.

Certiorari to review a judgment of the superior court for Pierce county, Card, J., entered September 8, 1913, denying an application for the appointment of an administrator of partnership property, upon sustaining objections to the jurisdiction.   Reversed.

*Walter M. Harvey, Ralph Woods,* and *Frank H. Kelley,* for relator.

*Hayden, Langhorne & Metzger,* for respondents.

ELLIS, J.—Certiorari to review the proceedings of the superior court of the state of Washington for Pierce county in the matter of the estate of Nelson Bennett, deceased.

The proceedings, as disclosed by the record, were as follows: On July 23, 1913, the decedent died, as it is claimed, intestate, leaving estate within Pierce county. On petition of the widow, a special administrator was appointed, qualified by giving a bond of $10,000, and took possession of the estate on July 25. The petition disclosed as a part of the assets a partially performed contract with the Northern Pacific Railway Company, to construct what is known as the Point Defiance tunnel, in the northwestern part of the city of Tacoma, and assigned, as one of the reasons for the appointment of a special administrator, that the work contemplated by the contract required immediate supervision. Thereafter, the widow filed her petition for appointment as administratrix of the estate. On July 30, the relator filed his petition, alleging that he was a general partner of the decedent for the construction of the tunnel under contract with the railroad company, and prayed that letters of administration of the partnership be issued to him. Both petitions were set for hearing on August 9. By continuance the matters came on for hearing on August 13, before the Honorable Ernest M. Card, one of the judges of the superior court for Pierce county, and the widow answered the petition of the relator, denying the partnership, and filed a motion challenging the jurisdiction of the court to determine the issues raised by that petition and her answer thereto, on the grounds, first, that the relator's petition was premature in that no inventory of the estate had been filed; and second, that the superior court, sitting in probate, had no jurisdiction to determine whether or not the alleged partnership actually existed. The court sustained the motion upon both grounds.

On August 13, the widow was appointed administratrix of the estate, filed her bond fixed in the sum of $101,000, qualified, and has since acted as administratrix. On August

26, she filed an inventory of the estate, which disclosed the tunnel contract above mentioned, and a large amount of tools, materials and equipment used in connection therewith, as a part of the property of the estate. Within five days after the filing of this inventory, the relator filed his petition setting up the facts upon which he claimed to be a partner of the decedent in the construction of the tunnel, and prayed that letters of administration of the partnership property be issued to him as surviving partner. Citation was issued to the administratrix and notices regularly posted. The administratrix answered, denying the material allegations of the petition, and setting up in bar to the petition a former adjudication upon the relator's first petition. To this affirmative matter, the relator demurred. With her answer, the administratrix filed a motion challenging the jurisdiction of the court to hear and determine the question involving the existence of the partnership on two grounds; first, because the superior court sitting in probate was without jurisdiction to determine whether, in fact, the partnership existed; second, that the court was without jurisdiction to appoint an administrator of a partnership estate except when the existence of partnership property is conceded. The matter was transferred from the probate department of the court to the department presided over by Judge Card, for the reason that he had made the original order in vacation. Upon the hearing, Judge Card sustained the relator's demurrer to affirmative matter in the answer of the administratrix, and also sustained the motion of the administratrix attacking the court's jurisdiction, and entered an order dismissing the relator's petition, with costs. Thereupon this court, upon petition and affidavit of the relator, granted a writ of review.

The petition and affidavit for the writ, after setting forth the matters above mentioned, alleged, in substance, that the relator's right to administer the partnership estate is a valuable right; that the partnership property is of great value, not less than the sum of $100,000; that the relator's interest

therein is not less than the sum of $25,000; that it is in jeopardy because the contract fixes September 1, 1913, as the time for its performance, and the work is now so far advanced that it would be completed within ninety days; that the contract is being performed by strangers thereto; that an appeal from the court's order would, in the ordinary course, not be heard and determined before April 1, 1914, within which time the contract would be fully performed, which time is in excess of the six months allowed by law for the administration of partnership estates, and that the relator would be deprived of the fruits of an appeal even if successful, by reason of the delay, and that his right to administer the partnership property and supervise the performance of the contract would be lost, to his great damage and pecuniary loss, for which he would have no adequate remedy, either at law or in equity.

The relator assigns as error, first, the denying of his petition filed July 30, 1913; second, the denying of his petition filed August 27, 1913, and dismissing the petition with costs.

The respondents move to quash the writ on the grounds, first, that it was improvidently issued, in that the petition of the relator shows that he has an adequate remedy by appeal; second, because of lack of jurisdiction to grant the writ upon the facts stated in the petition; third, insufficiency of the petition in law to justify the issuance of the writ. The respondents also demur to the petition on the grounds, first, that the allegations therein contained do not justify the relief prayed for; second, that there is an adequate remedy by appeal. It is thus apparent that the case presents but three questions for our consideration: (1) Would the remedy by appeal be adequate? (2) Has the superior court power, in a probate proceeding, to consider and determine the question of the existence of a partnership where the existence of the partnership is not conceded? (3) Was the denial of the first petition of the relator *res judicata* of the question here presented? We will consider these in this order.

I.   The relator admits the existence of the remedy by appeal, but insists that it is inadequate to preserve the fruits of the appeal if successful.   If, as a matter of fact, the contract provided that the tunnel should be completed by September 1, 1913, and if, as a matter of fact, it will be completed within ninety days from the time of the relator's application for. letters, as alleged in his petition and affidavit, it is obvious that the purpose and subject-matter of the alleged partnership will have largely ceased to exist before an appeal could be prosecuted to final determination.   The right to administer the partnership property is a valuable right.   This is clearly recognized by the statute, which provides that, where the general administrator administers the partnership property, he shall give additional bond in double the value of such property.   Rem. & Bal. Code, § 1440 (P. C. 409 § 275).   If there was a partnership, and if the court committed error in refusing to inquire into and determine whether, in fact, there was a partnership, it deprived the relator of a valuable right without the additional security contemplated by the statute.   Moreover, the period of six months within which the statute (Rem. & Bal. Code, § 1438; P. C. 409 § 271), contemplates partnership estates shall be settled unless extension be granted, will, in all probability, expire before the final determination on appeal could be had.   The relator would not only be deprived of the right to administer within that time, but also of any standing to ask for an extension of time. Manifestly, assuming a successful appeal, the fruits of the victory would be largely lost to the relator by lapse of time. In such cases, we have repeatedly held that the remedy by appeal is not that adequate remedy which precludes review by the extraordinary writ.

"This adequate remedy has not been construed to be as speedy a remedy as the remedy by extraordinary writ might be, but a remedy which preserves the fruits of the appeal when won.   In other words, the *status quo* of the parties litigant must be preserved, and, if by awaiting the result of an appeal the fruits of the litigation would be lost, the remedy has

not been considered an adequate remedy." *State ex rel. Smith v. Superior Court*, 26 Wash. 278, 66 Pac. 385.

See, also, *In re Sullivan's Estate*, 36 Wash. 217, 78 Pac. 945 ; *State ex rel. Wyman etc. Co. v. Superior Court*, 40 Wash. 443, 82 Pac. 875, 111 Am. St. 915, 2 L. R. A. (N. S.) 568 ; *State ex rel. Royse v. Superior Court*, 46 Wash. 616, 91 Pac. 4, 123 Am. St. 948, 12 L. R. A. (N. S.) 1010 ; *State ex rel. Speckert v. Superior Court*, 48 Wash. 141, 92 Pac. 942 ; *State ex rel. Schwabacher Bros. & Co. v. Superior Court*, 61 Wash. 681, 112 Pac. 927, Ann. Cas. 1912 C. 814 ; *State ex rel. Meredith v. Tallman*, 24 Wash. 426, 64 Pac. 759. Our decision in *State ex rel. Quigley v. Superior Court*, 71 Wash. 503, 129 Pac. 83, is not contrary to the views here expressed. In that case, the term of office in question extended beyond the term necessary for the determination of the appeal, and the *status quo* could be preserved by a mere preservation of the ballots offered in evidence as exhibits, as physical evidence is preserved in other cases. Moreover, to have accorded the writ in that case, there being no showing of any peculiar circumstances requiring greater speed than in other cases of election contest, would have been to abrogate the special statute granting the appeal as incidental to the right of action. We there said:

"The legislature, in enacting § 4956, providing the remedy by appeal in election contests in the very same statute allowing a contest, must be presumed to have considered that remedy adequate in such cases. To hold that it is inadequate in this case is to hold that it is inadequate in any such case. It is, in effect, to repeal the statute, and declare a policy contrary to that expressly declared by the legislature upon a subject clearly within its province."

No such considerations are found in the present case. A review in detail of the many other decisions cited by the respondent would be of no profit. They are all distinguishable from the case before us.

II. The respondents contend that the superior court has power to appoint the surviving partner as administrator of

the partnership estate only in case the existence of the partnership is conceded. The constitution, art. 4, § 6, has conferred original jurisdiction upon the superior courts generally of all matters of probate and of all cases in equity, and of all actions at law, not expressly excepted. As said in *Moore v. Perrott*, 2 Wash. 1, 25 Pac. 906:

"The language of the constitution is not that the superior courts shall have exclusive jurisdiction, but it gives to the superior courts universal original jurisdiction, leaving the legislature to carve out from that jurisdiction the jurisdiction of the justices of the peace and any other inferior courts that may be created."

In conferring jurisdiction upon the superior courts in probate matters, the constitution makers did not carve out a section of the jurisdiction of the courts of this state and confer it as a limited subject upon the superior courts as probate courts of limited jurisdiction. The failure at all times to observe this fundamental fact has led to some confusion in our own decisions. The constitution simply throws probate matters into the aggregate jurisdiction of superior courts as courts of general jurisdiction, to be exercised along with their other jurisdictional powers, legal and equitable, and as a part of those general powers. The respondent claims that only the powers expressly enumerated in Rem. & Bal. Code, § 1278 (P. C. 409 § 1), can be exercised by the courts in probate matters; but this court has held that the inherent powers of the superior court, conferred by the section of the constitution creating the court, are not dependent on statutory sanction for their existence and exercise.

"By statute (§ 6355, Bal. Code) it is made the duty of the court sitting in probate upon the settlement of the final account to distribute the estate among the persons who are by law entitled thereto. This statute, we think, confers upon the court jurisdiction to determine who are entitled to the property, as the power to distribute includes the power to determine to whom distribution should be made. But, if this were not so, the court has inherent power to determine

the question, and this in a probate proceeding on the application of one claiming to be an heir or legatee. The constitution does not make the superior courts probate courts. On the contrary, it vests the superior courts with jurisdiction 'of all matters of probate'; hence the court is not shorn of its general powers simply because the cause before it may be one which was cognizable formerly in a court of probate. It possesses in every case and at all times its powers as a court of superior and general jurisdiction, and among these is the power to hear and determine the question to whom a bequest made by a decedent rightfully belongs. A statute, therefore, can neither add to nor take away the power, and it is immaterial to inquire whether or not one conferring such power is in existence." *Reformed Presbyterian Church v. McMillan*, 31 Wash. 643, 72 Pac. 502.

See, also, *Alaska Banking & Safe Deposit Co. v. Noyes*, 64 Wash. 672, 117 Pac. 492; *In re Ostlund's Estate*, 57 Wash. 359, 106 Pac. 1116, 135 Am. St. 990. When a superior court has presented to it through a petition, in any matter of probate, any issue touching the estate, it has jurisdiction both of the parties and of the subject-matter, and it deals with them not as a court of limited, but of general, jurisdiction. It may exercise all of its powers, legal or equitable, and may even invoke the aid of a jury to finally determine the controversy. The constitution has no more limited its powers in such cases than in others of which jurisdiction is conferred by the same constitutional provision.

"In this state, we have no probate court, properly speaking, as distinguished from the court that entertains jurisdiction of other matters. The court of general jurisdiction also hears and determines probate matters. Matters pertaining to probate are referred to what is called 'probate procedure' as distinguished from what is denominated 'civil' or 'criminal procedure.' But when the court, sitting in a probate proceeding, discovers in a petition the statement of facts which forms the basis of a controversy, we see no reason why it may not settle the issues thereunder when an appearance has been made thereto, and then proceed to try it in a proper manner, as any other civil cause. The court may require the

proceeding to be separately docketed, if, when the issues are formed, it appears to be such as should be thus docketed. Whether a citation should have issued on the strength of this petition or not, it is nevertheless true that appellant responded to the citation, and appeared generally by demurrer to the petition, and asked its dismissal simply on the ground that the court could not hear it as a probate proceeding. We think it was not necessary to sustain the demurrer and dismiss the proceeding on that ground. But, under our liberal practice as to the form of actions, the petition could be treated as in the nature of a complaint. The issues could be framed thereunder, and the cause tried without requiring another statement of the same facts under some other form or name. If it developed that it was not properly a probate proceeding, it would not be treated as such. We think the court did not err in overruling the demurrer and in refusing to dismiss the petition." *Filley v. Murphy*, 30 Wash. 1, 70 Pac. 107.

The decision in *In re Gorkow's Estate*, 28 Wash. 65, 68 Pac. 174, is not authority for the contrary view. It holds no more than that the powers of the court cannot be invoked in a probate matter "to hear and determine controversies between third persons which in no way affect the interests of the estate itself." This fact is pointed out in *In re Murphy's Estate, supra.* The respondents insist that the holding of this court in *In re Alfstad's Estate*, 27 Wash. 175, 67 Pac. 593, is decisive of this case. It is true that in that case this court held that the superior court, in a probate proceeding to settle an administrator's accounts and distribute the estate, had not jurisdiction to determine the claim of the administrator to one-half of the estate as a partner of. the deceased. That decision, however, as it seems to us, contravened the manifest purpose of the constitution and was too soon qualified, and in effect disregarded, to make it a basis for the invocation of the rule *stare decisis*. Though never in express terms overruled, it was so soon, and has been so often, impinged by other decisions not distinguishable in principle that it has long ceased to reflect the views of this court; and in

now frankly overruling it, we merely put into direct statement what was said in effect in the language above quoted from *Filley v. Murphy, supra,* and from *Reformed Presbyterian Church v. McMillan, supra,* and what we have said even more emphatically in the later decisions. *In re Sall,* 59 Wash. 539, 110 Pac. 32, 626, 140 Am. St. 885; *Sloan v. West,* 63 Wash. 623, 116 Pac. 272, and *In re Williamson,* 75 Wash. 353, 134 Pac. 1066. The last mentioned case cannot be distinguished in principle from the *Alfstad* case. In the *Alfstad* case, the administratrix claimed adversely to an estate in her hands in process of settlement. In the *Williamson* case, the guardian claimed adversely to the estate of her ward. In both cases, the argument was advanced that, claiming adversely and in a right antedating the probate, the claimant was a stranger to the estate whose claim could not be determined over her objection and against her consent in the probate proceeding. The contention was sustained in the *Alfstad* case, but it was denied in the *Williamson* case. In the *Williamson* case, we said:

"The argument of counsel apparently is, in substance, that, as to all such sums claimed by Mrs. Hazzard, she is a stranger to the guardianship estate, and that, therefore, she cannot be required to account for such sums in the guardianship proceedings. If this guardianship matter were pending in a court of exclusive, statutory probate jurisdiction, instead of a court possessing general equity powers, there might be some plausible grounds upon which to rest counsel's argument. In the case of *In re Sall,* 59 Wash. 539, 110 Pac. 32, 626, 140 Am. St. 885, this court had occasion to notice the nature and extent of the jurisdiction of the superior courts of the state in the guardianship of the estates of incompetent persons. It was there held that the jurisdiction of the superior courts in such matters is not limited like that of an exclusive probate court proceeding under statutory power, but that it proceeds with all the incidental powers of a court of equity. It is apparent, therefore, that the superior court of Kitsap county had jurisdiction, as a court of equity, by way of an accounting, over the subject-matter of every question that it determined in the settlement of the account of Mrs. Haz-

zard, and the only way Mrs. Hazzard could escape the effect of the court's accounting decree upon her relations with Miss Williamson prior to the actual commencement of the guardianship by appointment of the court, would be to successfully show that the court did not have jurisdiction over her person for the purpose of adjudicating such matters. This, we think, she has not successfully done, in view of the fact that she voluntarily became the guardian of the estate of Miss Williamson."

This language is as clearly applicable to the facts in the *Alfstad* case as in the case where used. In the former case, the administratrix became no less voluntarily the administratrix of the estate than did the guardian assume the similar relation of guardian in the latter case. The court had the same general jurisdiction over the person of the administratrix in the one case as over the person of the guardian in the other. There is no possible distinction, and the decisions being in direct antagonism, the former is overruled by the latter.

So also here. Both the general administratrix and the relator, by their application for letters, voluntarily submitted themselves to the jurisdiction of the court as a court of general jurisdiction, with authority to invoke all of the powers incidental to such a court necessary to the determination of the controversy in which the estate as such had a direct interest.

The decision in *Stewart v. Lohr*, 1 Wash. 341, 25 Pac. 457, 22 Am. St. 150, cited by respondents, holding, in effect, that the territorial probate court, in the probate of an estate, had no power to determine whether a homestead claimed by the husband of the deceased as his separate property was or was not community property belonging to the estate, is not decisive of the question here presented. It arose on appeal to the superior court from a decision of the territorial probate court, a court of limited jurisdiction. The estate was never in the superior court as a probate court, but only as an appellate court reviewing powers of an inferior probate court of limited jurisdiction and circumscribed power. The

case has no bearing upon the powers of the superior court sitting in probate as now constituted. Under our present constitution, it is clear that, upon proper petition and hearing, the adjudication of the question involved in *Stewart v. Lohr, supra,* under the rule announced in *Alaska Banking & Safe Deposit Co. v. Noyes, supra,* would be held determinative of the question of title where all of the parties had submitted themselves to the jurisdiction of the court in a probate proceeding. In the latter case, we held that a decree of distribution, determining that the property subsequently claimed to have been the separate property of the deceased husband was the community property of the deceased and his wife, and setting off one-half of it to her as not affected by his will, was a valid, final, and conclusive determination of the status of the property, in the absence of an appeal. If the superior court in probate proceedings can thus conclusively determine that property is community property when the issue is presented, it would be an anomaly to say that it had no jurisdiction to determine the same question the other way on proper evidence.

The decision in *In re Belt's Estate,* 29 Wash. 535, 70 Pac. 74, 92 Am. St. 916, properly considered, does not militate against our conclusion in this case. Though it is there said on authority of *Stewart v. Lohr, supra,* "that the probate court is without jurisdiction to try the title to property as between representatives of an estate and strangers thereto," the court seems to have overlooked the fact that *Stewart v. Lohr, supra,* had reference to the territorial probate court which was a court of limited jurisdiction. In any event, the trial court, in the probate proceedings in the *Belt* case, did determine as a fact that "moneys mentioned in the petition are not any part of the assets of the estate of the deceased," and was by this court sustained in that decision. This was certainly nothing more nor less than determining the question of title so far as the estate was concerned.

Our statute expressly confers upon the surviving partner

making timely application therefor, if a person qualified and competent to act as a general administrator, the right to administer the partnership estate.  Rem. & Bal. Code, §§ 1436, 1437, 1438 (P. C. 409 §§ 267, 269, 271).  The statute further provides that, if the surviving partner be not appointed to administer the partnership estate, its administration devolves upon the executor or general administrator, who is then required to give additional bond; and that the surviving partner, on demand, shall exhibit and give information concerning the partnership property, and on demand, deliver and transfer to the general administrator all the property, books, papers and documents pertaining to the partnership, and that on his failure so to do, he may be cited to appear before the court, and unless he show cause to the contrary, the court shall require him to comply with such demand. Rem. & Bal. Code, §§ 1440-1443 (P. C. 409 §§ 275-281).

Obviously, these sections of the statute would be of little utility if the court had no power at the outset to determine whether or not there was a partnership.  Of what avail would be the requirement of an additional bond, if the court had no power to consider and determine the antecedent existence of the partnership?  Of what avail a citation, if the court had no power to determine the very fact upon which its right to issue the citation must depend?  The existence or nonexistence of the partnership is a thing of vital importance to the estate itself, at every step of the proceedings, from the appointment of the administrator to the filing and settlement of his final account.  The assertion on the one hand that there was a partnership, and on the other that there was none, was simply allegation against allegation. The court could not assume, without trying out the fact, that either assertion was correct.  This has been held, even as to a court of confessed limited jurisdiction.  *Schick v. Corbbett*, 52 La. Ann. 180, 26 South. 862.  The superior court has every power and every facility for the determination of the existence of the partnership in the probate pro-

ceedings that it could acquire in an independent action. The matter being one in which the estate, as such is interested, it was the court's duty to exercise those powers. A review of the authorities cited from other jurisdictions to the contrary would be profitless, since, as we have seen, our own decisions are decisive of the question.

III. The respondents contended, on the argument, though failing to brief the question, that, in any event, their plea of *res judicata* must be sustained. The order denying the relator's first application to administer the alleged partnership estate was entered on August 13, 1913. It adjudged, first, that the petition was premature, and second, that in any event, the court could not consider or determine the question of the existence of a partnership when not conceded. This second holding was, as we have seen, clearly erroneous. We think the first was equally so. The purpose of the statute requiring application to be made within five days from the filing of the inventory (Rem. & Bal. Code, § 1437; P. C. 409 § 269), was to fix a limit beyond which application may not be made unless an extension of time be granted. It was never intended to prohibit the consideration of such an application if made before the filing of the inventory. Suppose that neither the next of kin nor any creditor made any application for letters. There would never be any inventory, and if the trial court's view be correct, the partner, though vitally interested, could never apply for letters. The court's ruling on this first branch of the order was interlocutory, but the second was final. It affected a substantial right and, in effect determined finally and adversely the relator's right to administer. (Rem. & Bal. Code, § 1716; P. C. 81 § 1183). It was a final dismissal of the relator's petition. It had the effect of a final judgment thereon. The time for taking an appeal therefrom was therefore, ninety days. Rem. & Bal. Code, § 1718 (P. C. 81 § 1187). It is too well settled to admit of serious question that the application for writ of review must be made within the statutory period for taking

an appeal. The writ before us brought up the whole record for review. The relator assigns as error the granting of the order dismissing his first petition, as well as that dismissing his second petition. The writ having been applied for well within the period allowed for an appeal from either order, was timely as to both orders. We are, therefore, not precluded from reviewing the first order in which the initial error was committed. It is clear that the question of *res judicata* is not involved.

The orders complained of are reversed, and the case is remanded with direction to the trial court to try out and determine whether, in fact there was a partnership, and either to grant or refuse letters to the relator according to that determination.

CROW, C. J., GOSE, CHADWICK, and MAIN, JJ., concur.